## Care *versus* Keller.

77  487
133  365

1. The Statute of Limitations of 1785 applies to an action of dower, *unde nihil habet*, by a widow for property of which her husband had been seised, but which was aliened by him before his death.

2. After conveyance the seisin of the grantee is in his own right and adverse to the grantor and his heirs. This is so as to a contract of sale and delivery of possession consummated by a decree of specific performance and conveyance.

3. The estate is equitably converted by the contract, and specific performance under the decree relates back to the contract of sale in giving effect to the rights acquired under it.

4. In January 1846 land was sold by contract, conveyance to be made the next April; in March vendor died, leaving a widow; the vendee took possession in April. The Orphans' Court decreed specific performance of the contract in April 1847; the deed was made under the decree April 24th 1848. The widow brought suit for dower September 22d 1868. *Held*, that she was barred by the Statute of Limitations, possession having been taken under the contract in April 1846.

5. The right of action of the widow accrued when the vendee, by some unmistakable act or declaration, after the death of the vendor, asserted his right under the contract and claimed the ownership of the land.

6. Notice to the vendor's representatives of the vendee's intention to hold the estate, taking possession or being in possession and exercising unequivocal acts of exclusive ownership, would be such assertion of title as to give the widow a right of action; from that time her right would be affected by the Statute of Limitations.

March 4th 1875.    Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON and PAXSON, JJ.

Error to the Court of Common Pleas of *Berks county:* Of July Term 1873, No. 7.

This was an action of dower *unde nihil habet*, brought September 22d 1868, by Sarah Keller against Eli Keller and others, heirs of George Keller, deceased. The plaintiff having died, Nathan Care, her administrator, was substituted on the record. The defendants pleaded *ne unques seisie que dower* and the Statute of Limitations.

The plaintiff claimed dower as the widow of John Keller, deceased, out of about 80 acres of land in Union township. John Keller died March 6th 1846, leaving the plaintiff to survive him; she died in January or February 1870.

The case was tried December 3d 1872, before Woodward, P. J.

The plaintiff gave in evidence a contract, dated January 12th 1846, between John Keller and George Keller, the ancestor of the defendants, for the sale to George of the 80 acres of land out of which the dower is claimed, for $950, of which $500 were to be paid on the 1st day of next April, and the remainder in two years from that day. On the 16th of February 1847 the administrator, &c., of John Keller, presented a petition to the Orphans' Court, setting out the death of John Keller, the contract of sale with

[*Care v.* Keller.]

George Keller, the payment by George of $350, part of the first instalment, to the administrator, and praying for specific performance of the contract. On the 9th of April 1847, the proof, &c., was adjudged sufficient and specific performance decreed. On the 24th of April 1848, the administrator, &c., of John Keller, in pursuance of the decree, made a deed to George Keller of the 80 acres.

The plaintiff, having given evidence as to the annual value of the land, closed.

The defendants then called William Wamsher, who testified: "John Keller died in 1846. After his death George Keller lived on 80 acres of land in Union township. John Keller died on this land in March, and George moved on in April. After he moved there, in April 1846, he lived there till his death, five years ago. Held exclusive possession and control of the land. John Keller's widow lived there at the time of his death. She left when he moved in. George moved in on 1st or 2d of April 1846. The widow moved to a place about half a mile below. She was'nt there when he moved in. George was there as the owner of the property."

The court charged: * * *

"This action was brought to October Term 1868, more than twenty-one years after the date of the contract, but less than twenty-one years from the date of the deed executed by the administrator of John Keller.

"The court do not propose to embarrass the jury by a discussion of the various questions which have arisen in the course of this cause. They will confine themselves to the practical points presented for deliberation and decision. In the first place, does the Statute of Limitations apply to an action of dower. The second section of the Act of the 26th of March 1785, is in these words: 'From henceforth no person or persons whatsoever shall make entry into any manors, lands, tenements or hereditaments after the expiration of twenty-one years next after his, her or their right or title to the same first descended or accrued, nor shall any person or persons whatsoever have or maintain any writ of right, or any other real or possessory writ or action for any manor, lands, tenements or hereditaments of the seisin or possession of him, her or themselves, his, her or their ancestors or predecessors, nor declare or allege any other seisin of him, her or themselves, his, her or their ancestors or predecessors, than within twenty-one years next before such writ, action or suit so hereafter to be sued, commenced or brought.' This language is certainly broad enough to include any suit brought to recover the possession of land. Before the Statute of Merton, nothing but land could be recovered in dower. Since the statute, it could hardly be claimed that the action would remain a real one where the husband should die disseised, when the widow would be entitled to an assignment of one-third by

[Care *v.* Keller.]

metes and bounds, and would become a personal one where the husband should die seised, when the widow could take damages equal to one-third of the annual value. The ground has been taken that the statute should not apply because the words ' ancestors or predecessors' would be incongruous if used in reference to a tenant in dower. But it was not the purpose of the legislature to define the status of a tenant of the freehold of any class. It was ' the seisin or possession' of the tenant under whom title should be asserted, in regard to which the law was framed. The claimant was to be barred if the suit had not been commenced within twenty-one years after the previous ' seisin or possession' had come to an end. Although the husband dying seised, the claim of the widow is for money, yet it is for an interest in land,—it is, at least, a right issuing out of land,—and it is founded directly upon the preceding ' seisin or possession' of the husband, extending down to the very hour of his death. Nothing could indicate more clearly the uniform judicial, professional and popular conception of the nature of this action than the provisions of those sections of the Act of the 13th of June 1826, relating to the commencement of real actions : sects. 79, 80, 81, 88, Pamph. L. 587, 1 Br. Purd. 55, 56, pl. 1–4, title, ' *Actions Real.*' This act was drawn by the commissioners appointed to revise the civil code, and was passed by the legislature in the words in which it was reported. The sections referred to regulated the practice of the courts in ' actions of dower, partition, waste, ejectment, nuisance and all other pleas of land.' ' With us,' said Bell, J., in Jones *v.* Patterson, 2 Jones 149, ' dower is strictly a real action, originating in, and proceeding upon the principles, and according to the forms of the common law, and is so treated by our legislation in respect of it ;' and reference was then made to the Act of 1836. In Culler *v.* Motzer, 13 S. & R. 356, while the material question was whether the Statute of Limitations ran against a widow's claim of dower during coverture, or only commenced to run at the date of the husband's death, it was assumed as settled and undisputed that the statute applied to the action. The suit was on a bond for the purchase-money of land conveyed with covenants of warranty, and defence was made on the ground of defect of title, and an outstanding claim of dower by the widow of the grantor. Justice Duncan, delivering the opinion of the Supreme Court, said : ' If the entry and possession had been adverse to the husband's right, and his right of entry had been barred by the Statute of Limitations, the widow's dower would have been barred. Our Act of Limitations comprehends as well all possessory actions, as all legal actions.' The same view of the subject was taken in Rankin *v.* Tenbrook, 6 Watts 388. The case of Culler *v.* Motzer, it is admitted, does not amount to an authoritative decision of the point in issue. But it certainly indicates settled professional opinion in regard to it,

[Care *v.* Keller.]

and it is not known that in any case any rule has been established to weaken its effect.    In Jones *v.* Powell, 6 Johns. Ch. 194, the general subject was discussed by Chancellor Kent.    The New York statute had declared that 'no action for the recovery of any lands should be maintained unless on a seisin or possession of the plaintiff or of the ancestor or predecessor of the plaintiff, within twenty-five years before such action brought.'    The chancellor said : ' As far as the widow's action at law belonged to the class of possessory actions, founded on the right of entry, it would have fallen under the same limitation as an action of ejectment, and as far as it partook of the nature of a writ of right, it would seem to fall within the limitation of twenty-five years applicable to the writ of right.  *  *  *  The general and sweeping language of the act, no less than the sound policy of it, would dictate the application of it to the action of dower, as well as to any other real action.'    It is true the judgment in Jones *v.* Powell, was controlled by another statute, but the courts of the country have never been accustomed to treat the carefully-considered utterances of Chancellor Kent as conjectural *dicta*.    The authorities collected in 2 Scribner on Dower 523–543, show that the general rule in the different states of the union is to hold Statutes of Limitation, similar to that of Pennsylvania, as applicable to dower.    And, generally, where dower is held not to be barred, it is in states that have adopted, or re-enacted the provisions of the English statute of 32 Henry VIII., ch. 2, and have modeled their practice upon the precedents under that statute of the English courts.    [It is believed that upon principle and authority the action of dower falls within the limitation of the Act of 1785.]

" This conclusion reached, a single inquiry remains.    In the circumstances of the present case, ought the bar of the statute to be applied ?    The view of the plaintiff is, that John Keller died seised, inasmuch as he retained the legal title and died in possession ; that upon his death there was no tenant of the freehold upon whom a writ in an action of dower could have been served; that the widow had no remedy in the Orphans' Court, because, although her husband died seised, his interest in the land had been converted into personalty by virtue of the contract ; that George Keller became tenant of the freehold, so as to be liable to the widow only when the conveyance was made to him under the decree for specific performance, on the 24th of April 1848, and that, consequently, the action, having been commenced within twenty-one years from the date of the conveyance, the defence of the statute cannot be sustained.    If this theory is to be taken as true, without qualification, it would follow that a widow in the position of Mrs. Keller could bring no suit for fifty years, if a vendee, satisfied with his contract, and possession under it, should pay the purchase-money, and leave the legal title in the vendor's heirs.    It is mani-

[Care v. Keller.]

fest that the problem presented must be solved in some other form than this.

"The general rule of law in Pennsylvania is that the action of dower cannot be maintained where the husband dies seised and in possession, the remedy of the widow being in the Orphans' Court: Thomas v. Simpson, 3 Barr 60; Taylor v. Birmingham, 5 Casey 306. But the rule has been made subject to some peculiar modifications, in consequence of the importance that has always been attached here to equitable estates, and of the effect that has always been given to alienation by contract. This is illustrated by the cases of Riddlesberger v. Mentzer, 7 Watts 141, and Covert v. Hertzog, 4 Barr 145. In each of those cases suit was brought after probate of the contract and execution of the deed. In neither case does it appear from the report whether the action was for land in severalty, or for damages. It is of course indispensable in the present case that John Keller should legally appear to have died seised. Otherwise the action, being for damages, could not be sustained, and if he was not seised, some vendee, grantee, or disseisor must have been tenant of the freehold, and in favor of such a tenant the statute would run from the time of the husband's death. That there was such seisin in John Keller at the time of his death as to warrant an action for damages is shown by the case of Jones v. Patterson, 2 Jones 149. There, the husband of the plaintiff had sold by contract to Edward Hooper, and Hooper having died, the report states affirmatively that 'no deed was ever executed to the administrators in trust, or to the heirs of the said Hooper.' Hooper's heirs conveyed to Patterson, one of the defendants, by deed. Patterson sold to John Harvey by articles of agreement; and Harvey sold, apparently by contract also, to John Casporus, who was joint defendant with Patterson. The special verdict found, also, that Patterson had never been in possession of the land. The Supreme Court held the action of dower to be maintainable as against both of the defendants. [The conveyance of the legal title, therefore, is not indispensable to give the widow the right to sue.] When, then, does this right accrue? It would seem reasonable to answer, [when the vendee, by some unmistakable declaration, or some unmistakable act, made or done after the death of the vendor, has asserted his right under the contract, and has claimed the ownership of the land.] [Notice of his intention to hold the estate, given to the vendor's legal and personal representatives, the taking possession of the property, or, being in possession, the exercise of unequivocal acts of exclusive ownership would be such assertion of title as to give the widow her right of action, and from that moment her right would be affected by the Statute of Limitations.] Here, under the testimony of William Wamsher, it is claimed, on behalf of the defendants, that George Keller entered into the posses-

[*Care v.* Keller.]

sion of this land about the 1st of April 1846, within a month from the time of his father's death—that the widow left the premises before he moved in,—that he claimed exclusive ownership, and exercised exclusive control over the property, and that his possession under the contract was under a claim of right as definite as it afterwards was under the deed of the administrator, made in April 1848. The credibility of testimony is for the jury. [If after George Keller's entry on the land, his possession and claim of title were so significant and unmistakable as, in view of the rules stated by the court, to give notice to the widow of his assertion of title, an action of dower could have been maintained by her, and if this entry was made more than twenty-one years before the action was commenced, the Statute of Limitations would be a bar to a recovery."]

The verdict was for the defendants.

The plaintiff sued out a writ of error and assigned for error the parts of the charge in brackets.

*A. G. Green* (with whom was *Louis Richards*), for plaintiff in error.—The Statute of Merton, 20 Henry III., ch. 1, provided that a widow should recover damages in her suit of dower from the time of the death of her husband, when he died seised; and if not, then from the time of demand : Seaton *v.* Jamison, 7 Watts 535. As the Statute of Merton substituted damages in lieu of the right to have dower assigned by metes and bounds, the widow had no longer a right of entry, and the Statute of Limitations of 32 Henry VIII., ch. 2, which enacted that no person should make entry into any lands, &c., unless within threescore years, did not apply to the dower of the widow, as held consistently by the English courts : Angell on Limitations, § 367 n.

In the English law, the wife's remedy by action of dower is not within the ordinary Statutes of Limitation, for the widow has no seisin ; 4 Kent 70 ; Davenport *v.* Wright, Dyer 224 a ; 1 Shep. Touchstone (by Preston) 28 ; Barnard *v.* Edwards, 4 N. H. 107 ; Park *v.* Obear, 7 Metc. 24 ; Wright *v.* Conover, 2 Halst. Ch. 482 ; May *v.* Rumney, 1 Mann (Mich.) 1 ; Boyle *v.* Rowand, 3 Dessaussure Ch. 355 ; Jones *v.* Patterson, 2 Jones 149 ; Shurtz *v.* Thomas, 8 Barr 359.

*G. F. Baer*, for defendants in error.—The Statute of Limitations includes real actions ; dower is a real action : Jones *v.* Paterson, 2 Jones 149 ; and in Pennsylvania has always been treated as within the statute : Culler *v.* Motzer, 13 S. & R. 356 ; Rankin *v.* Tenbrook, 6 Watts 388 ; 2 Scribner on Dower 523–535.

Chief Justice AGNEW delivered the opinion of the court, March 15th 1875.

[Care *v.* Keller.]

We are of opinion that the Statute of Limitations of 1785, applies to an action of dower *unde nihil habet*, brought by a widow for property of which her husband had been seised, but which he had alienated before his death.   After conveyance the seisin of the grantee is in his own right, and is of course adverse to the grantor and his heirs.   The same effect must be attributed to a contract of sale executed by delivery of possession, and consummated by a decree of specific performance and conveyance.   The estate is equitably converted by the contract of sale, and the specific performance under the decree relates back to the sale in giving effect to the rights acquired under it.   The court below was therefore right in holding the possession to be adverse from the time it was taken under the contract, for from that time onward the vendee under the articles held for himself, and not for the vendor, except so far as the retention of the legal title made the possession subject to the rights of the vendor to enforce the contract, and this was finally extinguished by the execution of the decree for specific performance.   These questions are so well discussed, and the reasons stated in the charge of the learned judge below, it is unnecessary to say more.

Judgment affirmed.