ROBERT NORTH v. GEORGE METZ, JR.

*Agency—Evidence—Subsequent admissions.*

1. The relation of principal and agent cannot be established by evidence of dealings between the alleged agent and a third person which the alleged principal has neither authorized nor ratified, but which he expressly repudiates. Testimony of such transactions is irrelevant.

2. Evidence of the pecuniary circumstances of the alleged agent is irrelevant to establish the agency.

3. In an action against the principal, the admissions of an agent, after his agency has terminated, are not competent or relevant evidence.

Error to Newaygo. (Fuller, J.) May 12–13.—Sept. 29.

ASSUMPSIT. Defendant brings error. Reversed.

*Norris & Uhl* for appellant.

*William D. Fuller* for appellee.

CHAMPLIN, J. The plaintiff declared upon the common counts in assumpsit, and filed therewith his bill of particulars covering various items from August 29, 1881, to December 19, 1881, the most of which were for groceries and supplies used in running logging camps. Some of the items purport to be for goods furnished other parties, and some of the largest items are for money paid parties named for work. The defense was the general issue. The goods mentioned in the bill of particulars were by the plaintiff sold and delivered to one Charles E. Gregory, and were charged to him by the plaintiff upon his books of account at the times mentioned in the bill. The account not being paid by Gregory, the plaintiff brings this suit to recover the same of defendant, upon the ground that at the time such goods were purchased by Gregory he was in fact the agent of defendant, and was authorized to make such purchases, and that as soon as he ascertained that defendant was the principal he looked to him for his pay. He also claims that defendant, with a knowledge of the facts that Gregory bought the goods as his agent, acknowledged his liability to plaintiff therefor, and promised to settle for the same.

The plaintiff's theory was, and his evidence tended to prove, that some time in the spring of 1881, defendant and Gregory entered into an agreement whereby Gregory was to go up into Ashland, in Newaygo county, and take charge of a logging job, which defendant had with Messrs. Wyman & Buswell, and in addition to which he was to get out hemlock bark whenever he could operate it with profit, and hunt up and purchase hemlock bark wherever he thought it could be bought at a profit, and ship all bark to defendant at Holland. The defendant was to handle the bark and receive the money for it, and his compensation, aside from his living, was to be one-half the net profits arising from such sales. That defendant was to furnish the money as needed to carry on the business. That it was necessary, in order to carry on the business, to hire men and teams, overlook the cutting and skidding of logs, the peeling, hauling, and shipment of bark, the purchasing of supplies for the camp, the payment

of men, etc. And that he purchased the supplies and made the account with plaintiff in transacting the business, in which he was engaged for the defendant.

On the part of the defendant it was contended, and his testimony tended to prove: That in 1880 he operated a tannery at Holland; that Gregory had for some years before that, from time to time, sold bark to Metz by the cord. In 1880 he was anxious to find a location where he could put in logs by the thousand, and get out bark for sale. He found some timber in Newaygo county belonging to Wyman & Buswell of Grand Haven, with whom he proposed to make a contract. They were not willing to enter into a contract with him, not regarding him responsible. He then persuaded Metz to execute the contract with Wyman & Buswell, and turn the same over to him with an agreed price for the bark; Metz, of course, remaining responsible to Wyman & Buswell. Accordingly, after the contract was executed between Wyman & Buswell and Metz, Gregory and Metz made a contract, a memorandum of which was entered in Metz's journal, as follows, page 46: "Charles E. Gregory agrees to deliver, on cars, from two to three thousand cords of bark every year for two years, at Ashland, or other points where freight on railroad will not be more than from Ashland, at four dollars per cord, the bark to be measured at Holland; and agrees to take the Wyman & Buswell job at the same price Wyman & Buswell pay me, and Metz to advance money enough to build roads and get started. Gregory agrees to send itemized account of all moneys advanced." Thereupon, in May, 1881, Gregory moved to Newaygo county, and went to work on his job,—built his camps and roads, etc. Metz advanced him large sums of money on his contract; before June 25, 1881, $3140, and before January, 1882, over $12,000. In addition to the Wyman & Buswell job, Gregory put in logs under a contract with C. C. Comstock, of Grand Rapids, and had another job for C. F. Nason, of Grand Rapids, with neither of which Metz had anything to do. That Gregory's camps, from which he operated all these jobs, were located within four or five miles from Ashland. Gregory purchased

supplies for his camps from plaintiff and others. He paid up for a time, but failed to pay for the goods purchased after August, 1881, and thus failing the plaintiff sought to hold Metz for the goods. That Metz became dissatisfied with the way Gregory was conducting the business of performing the Wyman & Buswell logging job for which he was liable under his contract with them, and finally took control himself, and on June 15, 1882, Gregory quit and left the woods. Defendant also claims that there is no proof in the record, which purports to return all the testimony, that Metz ever gave Gregory authority to pledge his credit for one dollar, or that he was Metz's agent to buy goods.

The defendant's contention was and is that, conceding all that Gregory claimed as to the arrangement between himself and Metz, the defendant is not liable for the goods; that he knew nothing of it until after the trade was closed, and never recognized it; that not a single item in the bill of particulars was shown to have been sold and delivered, and Gregory ceased all connection with defendant and his business, June 15, 1882.

I am not prepared to say that, conceding all that Gregory claimed as to the arrangement between himself and Metz, the latter would not be liable in this action. There was other testimony in the case which tended to establish the fact of the authority of Gregory to purchase supplies to carry on operations, and that Gregory's acts in respect to this bill of items were for the benefit of Metz, and that he had recognized his liability and promised to pay it.

There were, however, grave errors committed in the admission of testimony which make a new trial necessary. It was error to admit in evidence the certificate signed by Gregory after his agency had ceased. This certificate contained admissions and statements of fact which it was not competent for the agent to make after he ceased to be agent. The certificate was as follows:

ASHLAND, LAKE P. O., July 11, 1882.

This certifies that the bill of R. North, for three hundred and forty and 62-100 dollars ($340.62) is correct to the

amount named, and is for supplies furnished as per his bill to Sandhill camp, sec. 25, town, 11, 12, said camp being run by me for George Metz, Jr, of Holland, at the time said supplies were furnished.                              C. E. GREGORY."

The error is not cured by the fact that there was other evidence of the balance due, and of furnishing the supplies. There is no way of ascertaining what testimony the jury founded their verdict upon. Some may have relied upon this certificate as evidence, not only of the amount due, but that the camp was run by Gregory for Metz at the time the supplies were furnished. There is no ground for its admission under the evidence based upon the idea of a partnership existing between Gregory and Metz. It was also error to admit testimony of the dealings between Gregory and Alanson Thayer, and also between him and David Shaw. It did not tend in the remotest degree to establish the fact of agency between Metz and Gregory.

Plaintiff's counsel was permitted to show by Thayer that he had sold Gregory goods on credit, and had requested Metz to pay the bill, and that he refused, and that it still remained unpaid; and plaintiff's counsel was permitted to comment upon this testimony to the jury in a way that implied that this was a test case, which would determine the liability of Metz to pay Thayer for the goods sold by him to Gregory. The evidence and the comments, which were duly excepted to, were alike improper, and should have been excluded by the court.

It was also improper to admit testimony of Gregory's pecuniary circumstances. It did not tend to establish the issue, and was well calculated to influence the minds of the jurymen in favor of the plaintiff.

It is unnecessary to notice the errors alleged relative to the charge and refusals to charge, nor is it necessary to pass upon the error alleged in amending the verdict, as these errors, if any exist (see *Higley v. Newell* 28 Iowa, 516–519; *Lee v. Bradway* 25 Iowa, 216, and cases cited), are not likely to arise upon a retrial of the case.

The judgment must be reversed and a new trial granted.

The other Justices concurred.