THE IRONWOOD STORE COMPANY v. SAMUEL A. HARRISON
AND S. M. GREEN.

*Principal and agent—Evidence—Ratification—Bill of exceptions.*

1. In a suit involving the liability of the defendants for goods ordered by an *alleged* agent, orders drawn on other parties, and not in issue in said suit, nor shown to have been filled, nor recognized or paid by the defendants, are inadmissible to prove such agency.

2. The statements of an alleged agent as to his agency, made in a matter not connected with his principal, have no tendency to prove such agency.

3. A bill of exceptions constructed in a connected narrative form, giving the testimony of each witness, and closing with the statement "and thereupon the defendants rested their case," will be presumed to contain all of the evidence bearing on the questions raised, *Hitchcock v. Burgett,* 38 Mich. 501,

4. An agent, in order to ratify the unauthorized act of another agent, must have general power to perform the act which he ratifies, and both must be agents of the same principal, and the agent whose act is in question must have professed to act as the agent of such common principal.

5. An unauthorized act of a stranger may be ratified by the party for whom he assumes to act, but not by his general agent, unless the power of appointing agents has been delegated to such agent.

Error to Gogebic.   (Williams, J.)   Argued April 5 and 9, 1889.   Decided June 14, 1889.

Assumpsit.   Defendants bring error.   Reversed.   The facts are stated in the opinion.

*M. M. Riley,* for appellant.

*Hammond & Buck (D. E. Corbitt,* of counsel), for plaintiff.

CHAMPLIN, J.   Action for goods sold and delivered.

In the spring and summer of 1887, Harrison & Green were contractors for building about sixty miles of railroad from

the Montreal river to a point about eight miles from Bessemer, being a portion of the Duluth, South Shore & Atlantic Railroad.

Guidio & Warner were subcontractors, and were to build about eight miles of the road. They were to have their job completed on or before the sixteenth of June.

Plaintiff is a corporation doing business at Ironwood, selling goods and supplies.

One Patrick Nickolson was an agent for Guidio & Warner. He was what was called a "walking boss" or "foreman." His duty was to look after different gangs of workmen, to see if they were doing their duty, and instruct them what to do, but he had no charge over supplies.

About the twelfth of May, 1887, Nickolson ordered a bill of goods from plaintiff, and they were furnished to Guidio & Warner. The goods were delivered to Nickolson by plaintiff, who told plaintiff that Guidio & Warner were subcontractors to Harrison & Green. The goods were not delivered on the twelfth according to the testimony of Mr. Atkinson, who made the sale, for the reason that he did not know Guidio & Warner, and he held the goods until he heard further about them. He saw Nickolson on the sixteenth, and he guaranteed it would be all right; that the goods would be paid for. Some more goods were ordered on the sixteenth, and were all delivered to Nickolson at the same time.

An attempt was made to prove the agency of Nickolson for Harrison & Green. For this purpose the plaintiff introduced as a witness Michael H. Martin, who was engaged in the mercantile business in Bessemer, another village of Gogebic county, who testified that he was acquainted with Harrison & Green, and also with Patrick Nickolson, during April and May, 1887; that from February to and including June he was "walking boss" for Harrison & Green; that the duties of a walking boss are to see that the work of the subcontractors is done according to the contract, but he

has no charge over supplies; that he had dealings with Harrison & Green during those months; that he delivered goods to Guidio & Warner on both written and verbal orders of Patrick Nickolson; that these goods were paid for by Harrison & Green's pay-master, sometimes by check, and sometimes by cash; when paid for by check, it would come from Milwaukee, signed "Harrison & Green;" that these orders were signed by Patrick Nickolson in his own name, and not as agent for Harrison & Green; that he thought he had the orders still in his possession, and could produce them.

Counsel then submitted to the inspection of witness an order given to Bingham & Perrin, and asked this question:

"Look at that, and see if that is the form of the order you received."

Defendants' counsel objected to the question and testimony as incompetent, which was overruled, and the witness answered:

"It is something similar."

The witness was dismissed, and afterwards recalled, and testified that he had looked for the orders he had testified to the day before, but did not find them, but he thought they were there, as he had seen them not more than five or six weeks before. He testified that he knew Pat Nickolson's handwriting. An order was then shown witness, and he said that he thought it was Nickolson's signature; that he could not swear to it, because he did not see it often enough to know exactly; that he only saw one or two similar to that exhibited to him. In his opinion, it was Nickolson's signature. The order was then offered in evidence. It was dated May 30, which was some two weeks after the goods were ordered from plaintiff. Objection was properly made, but the court, remarking that it was very near the time, permitted the order to be read in evidence, as follows:

"*Bingham & Perrin:*   Please let bearer have barrel of sugar; 100 lbs. lard; one tub butter; one barrel of pork.

"PAT NICKOLSON.

"HARRISON & GREEN."

Another order, dated June 1, 1888, was permitted to be read in evidence to prove that Nickolson acted as agent. It reads as follows:

"OFFICE OF BINGHAM & PERRIN,

GENERAL MERCHANDISE.

"June 1, 1888.

"Please deliver to bearer 15 pairs of blankets, and charge same to Harrison & Green.

"PAT NICKOLSON."

These orders were not in issue in this suit. There was not one word of testimony to show that Bingham & Perrin ever delivered the goods ordered to Harrison & Green, or that they ever knew of the action of Nickolson, or recognized it or paid for them. The testimony was irrelevant to the issue, and should have been excluded. *North v. Metz,* 57 Mich. 612 (24 N. W. Rep. 759).

Richard Gage, a witness for plaintiff, kept a hotel, and knew Nickolson. He testified that he thought that Nickolson was walking boss, and acted as agent for Harrison & Green; that he used to get him to O K his board accounts; that Mr. Harrison told him to be sure to have Mr. Nickolson or Mr. McDougal O K his accounts, and it would save dispute among some of the head men. These board-bills were for men that were going to work for Guidio & Warner. They were bringing a good many men, sometimes as high as 30 or 40 a day. He testified:

"I don't say Nickolson was agent to buy supplies. I say they told me to have Nickolson O K the board bills, and they would be all right."

With reference to these board-bills the testimony of Mr. Bloodgood, who was pay-master of defendants' road, shows that during the progress of the work more or less men were

sent in to go upon the work, and McDougal arranged to have them kept by the hotel-keepers until they could be sent out on the work. McDougal was authorized to pay for such board, and he paid, on the O K of Mr. McDougal, bills of that nature.

Error was also committed in permitting the witness Haggerson, who was a justice of the peace, to testify that in one or more suits in which Guidio & Warner were interested, but in which Harrison & Green had no interest, Nickolson claimed to be a walking boss for Harrison & Green. Such testimony had no tendency to prove that Nickolson was agent of Harrison & Green. It was showing the statement of a person who claimed to be an agent as to his agency in a matter not connected with his principal. There was no testimony in the case that showed, or tended to show, that Nickolson was a general agent of Harrison & Green, or that he was specially authorized to purchase supplies for them.

The defendants' counsel claims that the testimony is not all returned in the bill of exceptions, and that the presumption in favor of the verdict is that there was such testimony. We find no express statement that the testimony is all returned, but the bill of exceptions contains statements which are equivalent thereto. The witnesses appear to have been introduced, and the record states that they were "sworn, and testified upon direct examination as follows," and, "upon being cross-examined, testified as follows." And at the close of the plaintiff's evidence the statement is: "And thereupon said plaintiff rested its case." And then follows:

"And the said defendants, to prove and maintain the issue on their part, called William Bloodgood as a witness, who, upon direct examination, testified as follows."

And so the record shows a connected narrative, giving the testimony of each witness, and closing with the statement: "And thereupon the defendants rested their case." When a

bill of exceptions is so constructed, it will be presumed to contain all the evidence bearing on the questions raised. *Hitchcock v. Burgett*, 38 Mich. 501.

The main question turned upon the controversy whether Harrison & Green had ratified the act of Nickolson in ordering the goods. To show ratification, the plaintiff introduced testimony tending to show that, after the goods had been furnished, plaintiff, through Atkinson, presented the bill thereof to one A. D. McDougal, who represented himself as agent of Harrison & Green. Atkinson testified that he presented three bills to McDougal, who looked them over, and told him to take the Guidio & Warner bill to Nickolson, and have him O K it, and he would pay it the next day; that he did present the bill to Nickolson, and he marked it " O K," and signed his name; that he afterwards saw it in Harrison & Green's office, in Bessemer, O K'd by Nickolson. The bill was afterwards produced in court with the O K of Nickolson upon it. Another bill, called the " tie-bill," McDougal handed to a Mr. Chamberlain, and told him " to see to that." For the small bill of $36.20, which had been ordered by McDougal, he told him he would have a check sent, which he did. It was admitted upon the trial by counsel for defendants that McDougal was agent for Harrison & Green.

Mr. McDougal was also sworn as a witness for defendants, and he testified that in April and May he was superintendent on the South Shore Road for Harrison & Green; that his authority was to represent them in everything connected with the construction of the road. Whenever it was necessary to obtain supplies, he was to get them.

The plaintiff claims that this testimony tends to prove a ratification by Harrison & Green, through their agent McDougal, and by his promise to pay plaintiff has been lulled into security, when it might have commenced its

attachment suit sooner, as Harrison & Green were non-residents.

In some cases an agent may ratify the unauthorized act of another agent; as—

"Where the act which, when done by one agent, was unauthorized, is within the general power of another agent of the same principal, the doing of the act by the first agent may be ratified by the second." Mechem, Ag. § 121.

Ratification by an agent depends upon certain facts, which must affirmatively be made to appear:

"1. The agent ratifying must have had general power to do himself the act which he ratifies.

"2. They must both be agents of the same principal, and the agent whose act is in question must have professed to act as agent of the common principal."

A stranger to a party, acting without authority, may do an act in the name of another, which that other may ratify, and so make it his own. But his general agent has no such authority to ratify the act of a stranger done in the name of the principal, unless power of appointing agents has been delegated to him by his principal. He cannot ratify without making the person for that act or occasion the agent of the principal, and this is beyond his general powers as agent.

Nickolson did not represent himself to plaintiff as being an agent for defendants. There is no testimony in the case tending to show that Nickolson at the time he purchased the supplies was the agent of defendants. The act, so far as Harrison & Green are concerned, was the act of a stranger making the purchase without authority from them, and not even in their name. McDougal, therefore, had no authority to ratify or bind Harrison & Green by any promise of payment. Nor could he estop the defendants from denying their liability by promising to pay, if Nickolson would O K the account. We think the case comes within the principles of the following cases: *Wells v. Martin,* 32 Mich. 478; *Danaher*

*v. Garlock,* 33 Id. 295; *Frost v. Lawler,* 34 Id. 235; *Hammerslough v. Cheatham,* 84 Mo. 13.

It follows that the judgment must be reversed, and a new trial granted.

SHERWOOD, C. J., and MORSE and CAMPBELL, JJ., con-curred. LONG, J., did not sit.