## MARGARET S. HASTINGS *vs.* ELIZABETH MACE.

Essex. November 1, 1892. — December 8, 1892.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & BARKER, JJ.

*Dower — Assignment after Twenty Years from Husband's Death — Statute — Bar.*

Under the Pub. Sts. c. 124, § 13, a widow, who for more than twenty years after her husband's death has occupied, with his heirs, land of which he died seised, and of which she was dowable, or has without their objection received the rents and profits of such land, may, without being barred by § 14, bring a petition for the assignment of her dower, whenever the heirs seek to hold their shares of the rents and profits in severalty.

APPEAL from a decree of the Probate Court, granting the petition of Elizabeth Mace for the assignment of her dower in the estate of her former husband, Francis Mayo. The case was heard by *Holmes*, J., and reported by him for the consideration of the full court; such decree to be entered as the court might order. The facts appear in the opinion.

*M. J. McNeirny*, for the appellant.

*S. D. York & C. A. Russell*, for the appellee.

BARKER, J. Francis Mayo died on October 17, 1863, and his widow, now Elizabeth Mace, became entitled to dower in the land in which she asks to have dower assigned. She occupied the land with the heirs, and received the rents and profits, the heirs not objecting, until August or September, 1890, since which time the rents have been, against her protest, paid to one of the heirs. Her petition was filed on September 5, 1891. The question reserved is whether her right to file the petition more than twenty years after her husband's death is saved by the Pub.

Sts. c. 124, § 13, or barred by the Pub. Sts. c. 124, § 14. So far as it affects this question, § 14 of the Pub. Sts. c. 124, is identical with § 6 of the Gen. Sts. c. 90, from which it purports to have been derived; and that section was taken from the St. of 1858, c. 56. Before the passage of the St. of 1858, c. 56, a widow's right to dower was not subject to any statute of limitations. *Parker* v. *Obear*, 7 Met. 24. The Pub. Sts. c. 124, § 13, so far as it affects dower, is of the same effect as the Gen. Sts. c. 90, § 7, from which it purports to be derived, and the latter section is substantially identical with the Rev. Sts. c. 60, § 6. This section was derived from the St. of 1816, c. 84, with, as the commissioners who drafted the Revised Statutes say in their note, "some change of the language to make it express more clearly the intention of the Legislature, as understood by the court." The St. of 1816, c. 84, was considered in the cases of *Gibson* v. *Crehore*, 3 Pick. 475, and *Gibson* v. *Crehore*, 5 Pick. 146. By its terms, a widow was entitled to have and receive one undivided net third of the rents, incomes, and profits of the estate of which her husband died seised, until her dower should be actually assigned and set out to her by the heir or by a court. In *Gibson* v. *Crehore*, 3 Pick. 475, a widow sued in assumpsit to recover one third of the rents and profits received by one who, at an administrator's sale, had purchased lands subject to a mortgage. Owing to the mortgage she could not enforce her dower at law, and no construction of the statute was necessary; but the court said that there was reason to believe "that this new remedy was intended only to be applied against the heirs of the deceased," and that it was "doubtful whether an action of assumpsit was intended to be given." In the second case, *Gibson* v. *Crehore*, 5 Pick. 146, 159, which was a bill in equity between the same parties, the court say that the language of the statute "is rather obscure, but its meaning seems to be to enlarge the widow's claim on the heirs, but not to affect the rights of *bona fide* purchasers." With the alterations made by the commissioners who prepared the Revised Statutes, the provision as it appears there and in the General Statutes seems clear; and we know of no reason why the language used in the corresponding provision of the Pub. Sts. c. 124, § 13, so far as dower is concerned, should not have its natural and obvious signification and effect. Thus construed, it enlarges the widow's

rights, by making legal her continued occupation of lands of which her husband died seised, and her receipt of one third of the rents, without having dower assigned, so long as the heirs do not object; and it says in terms that, whenever the heirs or any of them deem it proper to hold or occupy their share in severalty, she may claim her dower and have it assigned. If these provisions stood alone, there could be no possible contention that when, after an acquiescence on the part of the heir in the right of the widow to dower for twenty years or more after her husband's death, evidenced either by allowing her to occupy the lands with the heir, or to receive her share of the rents, she was then to be barred of all claim or remedy. Such an injustice could never have been intended. The purpose of statutes of limitation is to quiet stale demands, which, having been neither enforced by the owner nor acknowledged by the adverse party, may well be presumed to have been satisfied or released, and is not to destroy or to bar the enforcement of rights which have been long and constantly enjoyed and acknowledged. It is not possible that the St. of 1858, c. 56, could have been intended to work a change in the law, by which a widow, who, without objection from the heirs of her deceased husband, had for twenty years or more after his death continued with them in the occupation of lands of which he died seised, or in the receipt of her third of the rents, would be then barred of all claim or action to enforce her rights, if the heirs, after so long acknowledging them, should deny them or resist their enforcement. It is difficult to conceive that the provision of the Rev. Sts. c. 60, § 6, relating as it did only to lands of which the husband died seised, while the widow, unless she has released her rights, was dowable of all lands of which he had been seised during coverture, was not called to the attention of the Legislature which enacted the St. of 1858, c. 56; but it is impossible to suppose that any Legislature intended that claims to dower uninterruptedly made and acquiesced in from the time of the husband's death, in the very manner authorized by a statute not repealed, should be barred, equally with those made for the first time long after the husband's death. Whatever construction the court might have been compelled to give to the St. of 1858, c. 56, before the enactment of the General Statutes and of the Public Statutes, the provisions

as they now stand are to be construed in the light of the fact that the Legislatures which adopted the general revisions of 1860 and 1882 have in effect declared that the two sections are to stand together. They must, therefore, be so construed that they will be consistent with each other; and these repeated re-enactments make it the more certain that they should be so construed as not to work injustice. If we construe the Pub. Sts. c. 124, § 14, not to apply to cases in which the right to dower has been asserted and enjoyed by the widow, and acquiesced in and acknowledged by her husband's heirs or devisees, in the manner expressly authorized by the provisions of the Pub. Sts. c. 124, § 13, there will remain for the operation of § 14 a large field in which it cannot be said to work palpable injustice. Its limitation of twenty years from the husband's death will bar all claims or actions for dower in lands of which the husband was not seised at his death, and also in lands of which he was then seised, but in which the widow's right has not been acquiesced in and acknowledged. This may be done by giving to the words "make claim for an interest," in § 14, the same meaning as if the phrase read "make for the first time claim for an interest," and to the words "for the recovery thereof" the meaning "for the recovery of an interest so claimed."

In view of the history of the legislation, and of the gross injustice which would result from giving to § 14 a strictly literal construction, we have no doubt that it is the intention of the Legislature that a widow who has for twenty years or more after her husband's death occupied, with the heirs of the deceased, land of which he died seised, and of which she is dowable, or has without their objection received her share of the rents and profits of such land, can, without being barred by § 14, claim and commence an action or proceeding for the recovery of her dower, whenever the heir shall deem it proper to hold his share in severalty.

*Decree of Probate Court affirmed.*