<table>
<tr><td>132</td><td>431</td></tr>
<tr><td>136</td><td>706</td></tr>
</table>

ELIZABETH BRITT v. MICHAEL GORDON, ET AL., Appellees.

**Dower:** SALE BY AGENT: RATIFICATION: EVIDENCE. Where the owner
1 of land, before his marriage, gave a power of attorney authorizing the grantee therein to convey the same, but which was not recorded until after the owner's marriage, and prior to its execution the attorney in fact had contracted in his name to convey the same to one who had gone into possession, all of which was unknown to the owner, his widow was presumptively entitled to dower; and the execution of the power of attorney was not a ratification of the unauthorized sale, nor did the acceptance of payment by the attorney in fact, unknown to the owner, relate back so as to affect the dower interest.

**Agency:** RATIFICATION. A power of attorney to do future acts is
2 not a ratification of acts already done by the appointee; nor can an attorney in fact ratify his own unauthorized acts.

**Action for dower:** LIMITATION. An action in equity for the ad-
3 measurement of the widow's dower, as against a stranger claiming the entire estate, is governed by the general statute of limitations and must be brought within ten years from the death of the husband.

*Appeal from Fremont District Court.*— HON. O. D. WHEE-
LER, Judge.

WEDNESDAY, JULY 11, 1906.

REHEARING DENIED, WEDNESDAY, NOVEMBER 21, 1906.

SUIT in equity for the partition of 100 acres of land. Plaintiff claims to own one-third thereof as widow of Richard Britt, deceased, and defendants claim to own all of it in virtue of a conveyance to Michael Gordon by Richard Britt through his attorney in fact, James Britt, of date April 20, 1872. The trial court dismissed plaintiff's petition, and she appeals.— *Affirmed.*

*F. E. Hammond* and *Eaton & Estes,* for appellant.

*T. S. Stevens,* for appellees.

DEEMER, J.— Some time in the year 1869, appellant's husband, then a single man, acquired title to the land in controversy. July 6th of that year, one James Britt, a

1. DOWER: sale by agent: ratification: evidence.

brother of Richard, executed in his own name a title bond for the land, in which he personally agreed to convey the same to Michael Gordon five years from the date thereof, upon payment of $500 in cash and $500 five years thereafter, which deferred payment was evidenced by a promissory note of said Gordon, made payable to James Britt. Part of the land therein described was, according to the bond, " a tract purchased by James Britt of William McCracken." Thereafter and on December 9, 1869, Richard Britt, who at all times material to our inquiries was a non-resident of the State, executed a power of attorney to James Britt, authorizing him (James) to enter into and take possession of the land in controversy, to grant bargain and sell the same, to execute and acknowledge deeds therefor, to demand, receive, and recover all money which should become due and owing by means of such sale, and to take all lawful means for the recovery thereof, fully ratifying and confirming all that his said attorney should do or cause to be done in virtue of

the power conferred. This was recorded April 29, 1872. Richard Britt was married to plaintiff September 21, 1871, and at that time the record title to the land was in Richard Britt. On April 20, 1872, Richard Britt, through his attorney in fact, James Britt, conveyed the land by warranty deed to Michael Gordon. Gordon went into the possession of the land under his title bond in the year 1871, and thereafter paid all taxes thereon, and since that time has received the rents and profits from the land, claiming at all times to be the owner of the entire title and estate. Richard Britt died intestate January 24, 1892, leaving plaintiff as his surviving widow. She had never been in Freemont county, Iowa, down to the time of her husband's death, and did not know of his ownership of land in this State until a few months before the beginning of this action. There is no evidence whatever that Richard Britt ever knew of the execution of the title bond or of the warranty deed, and there is no evidence that he personally ever received any part of the consideration for the deed. Neither Gordon nor the person representing him in the transactions ever knew that there was such a person as Richard Britt, until he received the deed from his attorney in fact, James Britt, who always acted as if he were the owner of the land. The title bond was recorded July 8, 1869, and, as we have said, Gordon moved onto the land in virtue thereof in March, 1871, which was some six months before plaintiff's marriage, and something like fifteen months after the power of attorney was executed, although it was not recorded until April, 1872. The lands were taxed in the name of Richard Britt down to and including the year 1872, although Gordon paid the taxes after securing the title bond. James Britt left Fremont county about the year 1869, and the last payment for the land was made to one Calhoun, who lived at Nebraska City, Neb., who undertook to and did secure the return of the note to James Britt, and a warranty deed for the premises from Richard Britt by James Britt, his

attorney in fact. Going to the county records, defendants' chain of title is through a deed executed by Richard Britt by his attorney in fact under date of April 20, 1872, and a power of attorney from Richard Britt to James Britt under date December 9, 1869, but recorded April 29, 1872. Plaintiff was married September 21, 1871, was never divorced, and survived her husband (Richard).

Under this showing it is clear that presumptively, at least, she is entitled to one-third of the land because she made no relinquishment of her dower interest therein, which attached inchoately at least on the date of her marriage. Defendants' reliance is on the title bond, through which they claim to have received their title, and, if this was authorized or ratified by Richard Britt before his marriage to plaintiff, then she can make no claim to the land. We have set out all the material testimony in the case bearing upon this question, and it is apparent that the title bond was not made in the name of Richard Britt, and that, so far as shown, James Britt had no authority whatever to make it. He did not assume to be acting for Richard, but for himself, and he describes some of the land as belonging to himself. The obligee in the bond did not know there was such a person as Richard Britt, and never heard of him until about the time he received his deed for the land. The power of attorney makes no reference whatever to the title bond, does not recognize or indorse it, but simply gives the appointee therein power to act in the future, and ratifies all that he (the attorney) might thereafter do under the power so conferred. There is absolutely no evidence that Richard Britt ever heard of the title bond, or that he ever received any part of the money realized thereon, or subsequently paid on the note given at the time the bond was executed. By taking the money on that note through his attorney he undoubtedly ratified the transaction, but this was long after his marriage, and cannot be held to relate back so as to prejudice appellant, who was then his wife.

Two things are relied upon by appellees as showing rati-
fication of the title bond before plaintiff's marriage to Rich-
ard Britt; one the execution of the power of attorney itself
to the man who had undertaken to make the sale, and the
other the conduct of the attorney, under the power after he
received it, and before plaintiff's marriage.  As to the first
proposition, there being no evidence whatever that Richard
Britt ever knew of the title bond until long after his marriage
to plaintiff, he did not, of course, ratify the title bond by
making the power of attorney.  Ratification must be based
upon knowledge.  Without knowledge there can be no ratifi-
cation.  The language of the power of attorney itself indi-
cates that he had no knowledge, or that, if he had, he did
not intend to ratify the title bond, for, if that had been
his intent, he would undoubtedly have so said.  So that, if
we are to resort to inferences, we must presume that Richard
knew nothing of the title bond until after his marriage to
plaintiff.  Of course, the knowledge which James Britt had
before the execution of the power of attorney cannot be im-
puted to Richard Britt, at the time he executed the power, for
there is no evidence whatever that James was his agent,
and, moreover, James did not in making the title bond as-
sume to be acting as agent.  So that the making of the power
of attorney to one who alone had knowledge of what had
theretofore transpired with reference to the title bond could
not under the peculiar circumstances of this case be held to
amount to a ratification.  This is hornbook law, and we need
only cite in its support *McLaren v. Hall,* 26 Iowa, 297;
*Curts v. Scoles,* 1 Iowa, 471; *Walsh v. St. Paul Co.,* 39
Minn. 23 (38 N. W. 631); *Eggleston v. Mason,* 84 Iowa,
630; *Waughtal v. Kane,* 108 Iowa, 268; *Hakes v. Myrick,*
69 Iowa, 189; *Mathews v. Gilliss,* 1 Iowa, 242; *Milliken
v. Coombs,* 1 Me. 343 (10 Am. Dec. 70); *Moore v. Lockett,*
2 Bibb (Ky.) 67 (4 Am. Dec. 683); *McCracken v. San
Francisco,* 16 Cal. 591; *Haynes v. Seachrest,* 13 Iowa, 455;
*Reese v. Medlock,* 27 Tex. 120 (84 Am. Dec. 611); *Hamlin*

v. *Sears,* 82 N. Y. 327; *Bank v. Gifford,* 47 Iowa, 575; *Trudo v. Anderson,* 10 Mich. 357 (81 Am. Dec. 795); 1 Livermore on Agency, 50, and cases cited; *Fairfield Bank v. Chase,* 72 Me. 226 (39 Am. Rep. 319).

As to ratification by the attorney after he received the power and before plaintiff's marriage.

There is no evidence whatever that James Britt did anything after he received this power of attorney, and before plaintiff married Richard. He left the county very shortly after he received the power, and had nothing more to do with the land, so far as shown, until he made the deed in 1872. Gordon did not take possession until after he (James) had left the county, which possession was taken some seven months before plaintiff's marriage. Neither plaintiff, Richard Britt, nor his agent, so far as shown, ever personally knew that Gordon had taken possession under the title bond. True, the attorney had $500 of Gordon's money, which he received in virtue of his own title bond; but it does not appear what became of this. Surely his retention of the money under a sale of his own, made prior to the execution of the power of attorney, should not in itself be held to be a ratification binding upon plaintiff's husband. Aside from the retention of the money, there is absolutely nothing but silence on the part of the attorney from which to gather an inference of ratification on his part of the title bond. We are at all times, of course, speaking of a ratification before plaintiff's marriage. The money paid James Britt under the title bond has not been traced into the hands of Richard at any time, and it surely cannot be held that an agent who wrongfully receives money on his own account may, by simply retaining it after he is appointed agent, ratify the wrongful transaction simply by retaining the money, and thus bind his principal. If support be needed for such view, it is found in *Nebraska Co. v. Parker,* 52 Neb. 453 (72 N. W. 470); Hakes v. Myrick, *supra; Workman v. Wright,* 33 Ohio St. 405 (31

Am. Rep. 546); *Platt v. Axle Co., 41* Conn. 255; *Hammers-lough v. Cheatham, 84* Mo. 22; *Gunster v. Scranton Co.,* 181 Pa. 327 (37 Atl. 550, 59 Am. St. Rep. 650); *Thomson Co. v. Capitol Co., 65* Fed. 341 (12 C. C. A. 643); *Inner-arity v. Bank, 139* Mass. 332 (1 N. E. 282, 52 Am. Rep. 710).

The general rule is that mere silence alone cannot amount to a ratification of the act of an intermeddler. 1 Livermore on Agency, 50; Hamlin v. Sears, *supra.* This is what James Britt was when he executed the title bond in his own name, and the mere fact that he was a brother of Richard does not relieve him of this imputation. *Price v. Seydel, 46* Iowa, 696, and cases hitherto cited. But let us suppose that, under the power of attorney, James had power, as he did, to take possession of the land, and that he did not do so because he had theretofore made a title bond to the property in his own name. This is the most that can be claimed for the case. It appears, however, that Gordon did not enter into the actual possession of the land until March of the year 1871. At that time James Britt was not in Fremont county, and did not, so far as shown, known that Gordon had gone into the possession. The land was wild and unbroken prior to 1871, when Gordon went into possession, and when James received the power of attorney there was nothing for him to do in the way of taking possession. In law the possession was still in Richard, and so remained until Gordon too actual possession. Code, section 2912; the provisions of which were in force in the year 1869. So that Richard was in fact and in law in possession, and James had nothing to do but to remain silent. Hence his silence without more, and his failure to take actual possession under the power of attorney, is as applicable to one theory as the other, and, as the burden is upon defendants to show ratification, it cannot be found from this fact. James did not, so far as shown, turn over the money which he received upon his own sale at any time — surely not

before plaintiff's marriage, so that there is nothing in that amounting to a ratification. He (James) did not, so far as shown, know that Gordon had taken actual possession of the land before plaintiff's marriage, and he was not in position to know, for he was away from Fremont county at that time. These observations seem to settle this branch of the case.

But deeper still is a principle of almost universal application that a power of attorney to do future acts, which is what the one in suit amounted to, does not amount to a

2. AGENCY: ratification.

ratification of acts already done by the appointee. *Milliken v. Coombs,* 1 Greenl. (Me.) 343 (10 Am. Dec. 70); Waughtal v. Kane, *supra.* And, further, an agent or attorney does not have power to ratify his own unauthorized or illegal acts. *Trudo v. Anderson,* 10 Mich. 357 (81 Am. Dec. 795); *Hotchin v. Kent,* 8 Mich. 526; Mechem on Agency, section 121; *Ironwood Co. v. Harrison,* 75 Mich. 197 (42 N. W. 808). No citation of authority ought to be necessary to so plain a proposition as this. If this were not so, an agent would have unlimited authority, and it would be useless to attempt to guard it. Moreover, it would allow an agent to perpetrate the most outrageous frauds upon his principal. But here the act which it is claimed the attorney ratified is not shown to have been done originally on behalf of his principal. Indeed the contrary appears. That act was of a mere intermeddler, the intermeddler being the agent himself, and, without knowledge or express or implied authority from the principal, the agent or attorney had no authority to ratify it. That such authority was not given here is too plain for argument. There was no ratification of the title bond before plaintiff's marriage.

II. But it is argued that plaintiff's action is barred by the statute of limitations, and by reason of laches. Until the death of the husband plaintiff was in no event bound to proceed against Gordon, his assignees or grantees. *Lucas*

*v. White,* 120 Iowa, 735; *Hurleman v. Hazlett,* 55 Iowa,

3. ACTION FOR 256. Upon his death, her dower, which there-
DOWER: limi-
tation. tofore was initiate, became consummate, and
existed in that state until assigned or set apart to her. In
this State application for admeasurement of dower must be
brought within ten years from the death of the husband
or wife. Code, section 3369. But this does not apply to
an action in equity or for the partition of a distributive
share. It has been held, however, that the general statute
of limitations does apply to such actions. See cases *infra*
and *Sully v. Nebergall,* 30 Iowa, 339, and cases cited.
Plaintiff's husband died in January of the year 1892, and
this action was brought March 4, 1904. Actions to recover
real property must be brought within ten years from the
time the causes thereof arise. Code, section 3447, subd. 7.
The material inquiry here is when did plaintiff's cause of
action accrue. If her action were against the heirs of her
husband or their assignees or alienees, it would not have
occurred until ouster, or some denial on their part of
plaintiff's rights. *Burns v. Byrne,* 45 Iowa, 285; *Killmer
v. Wuchner,* 74 Iowa, 359; *Felch v. Finch,* 52 Iowa, 563;
*Mock v. Watson,* 41 Iowa, 241; *Starry v. Starry,* 21 Iowa,
254; *Rice v. Nelson,* 27 Iowa, 148; Sully v. Nebergall,
*supra; Berry v. Furhman,* 30 Iowa, 462. This not only
for the reason that the parties are tenants in common, but
for the further reason that it is as much the duty of the
heirs to see that dower is assigned to the widow as it is for
her to claim it, and in no sense may their claim or possession
be considered adverse until actively and distinctly asserted.
*In re Proctor's Estate,* 103 Iowa, 232. But where the
widow's action is against strangers, who claim the entire
title and estate under a deed from the husband, and under
which they have been in actual possession not only as against
him for the statutory period, but also as against her for
more than ten years after the death of the husband, a dif-
ferent rule should obtain, for as to them the widow is and

has been " at arm's length." In such circumstances her right
of action accrues immediately upon the death of her husband,
and the statute began to run in favor of strangers who hold
adversely, at that time, or within twenty days thereafter
under our Code (section 3369). This is the rule estab-
lished by the great weight of authority. *Elyton Land Co.
v. Denny,* 96 Ala. 337 (11 South. 218); *Livingston v. Coch-
ran,* 33 Ark. 294; *Stidham v. Matthews,* 29 Ark. 650;
*Sperry v. Swiger,* 54 W. Va. 283 (46 S. E. 126); *Tuttle v.
Wilson,* 10 Ohio, 24; *Winchester v. Keith,* 24 Ky. Law.
1033 (70 S. W. 664); *Berrien v. Conover,* 16 N. J. Law,
107; *Whiting v. Nicholl,* 46 Ill. 230 (92 Am. Dec. 248);
*Stowe v. Steele,* 114 Ill. 382 (2 N. E. 169); *Durham v.
Angier,* 20 Me. 242; *Chase v. Alley,* 82 Me. 234 (19 Atl.
397); *King v. Merritt,* 67 Mich. 194 (34 N. W. 689);
*Smith v. Wehrle,* 41 W. Va. 270 (23 S. E. 712); *Hasting
v. Mace,* 157 Mass. 499 (32 N. E. 668); *Thompson v. Mc-
Corkle,* 136 Ind. 484 (34 N. E. 813, 36 N. E. 211, 43 Am.
St. Rep. 334); *Anderson v. Sterritt,* 79 Ky. 499; *Robinson
v. Ware,* 94 Mo. 678 (8 S. W. 156); *Care v. Keller,* 77
Pa. 487; *Winters v. DeTurk,* 133 Pa. 359 (19 Atl. 354, 7 L.
R. A. 658); *Moore v. Frost,* 3 N. H. 126.

Appellant relies upon the propositions that these parties
became and were tenants in common upon the death of the
husband, and that the statute did not begin to run until
actual ouster by defendants; that their possession is pre-
sumed to be for the benefit of all, and, unless it became sole
or exclusive in the defendants, with the knowledge of
plaintiff, there is no ouster. It is further contended on her
behalf that in no event would the statute begin to run until
her right of dower was denied. Again, it is argued that
the point we are now considering has already been ruled
adversely to appellees' contention in former decisions of this
court. The difficulty with these propositions, aside from the
last, is that, while the widow does in law become a tenant
in common with strangers upon the death of her husband,

they, her co-tenants, are already in possession and "flying
a hostile flag to her." Their possession at that very time
is adverse, and of the entire premises in their own right.
As to her there is adverse possession on their part, from the
very beginning, and the rule that they are presumptively
in possession for all does not apply for the facts as proved
show that their possession is not for all, but in hostility
to the claim of the widow. There is a denial of her right·
from the beginning, and they are under no duty to set aside
her distributive share. Indeed, by their very conduct they
are denying that she has any. This, of course, is not true
as to heirs, their assignees or grantees, who take title at one
and the same time with her. On principle as well as au-
thority, as to strangers in actual possession, the statute begins
to run at the time the widow might have commenced her
action for the admeasurement of her dower or distributive
share. We shall now go to our own cases to see if there
is anything in them to support appellant's contention. We
have examined every one cited, and all that we can find, and
are ready to affirm that none to which our attention has been
called really supports the claim made for appellant. The
one which comes nearest doing so is *Felch v. Finch,* 52
Iowa, 563. But in that case there was no adverse posses-
sion of the land by the husband's grantee for the requisite
time. This fact was made controlling in that case. *Phares
v. Walters,* 6 Iowa, 106; *Starry v. Starry,* 21 Iowa, 254;
and *Rice v. Nelson,* 27 Iowa, 148 — each and all lend
support to the rule we have announced. Some of the cases
cited and relied upon by appellant were decided under a
statute which provided that, in actions for the recovery of
dower, " plaintiff must show, in addition to her evidence
of right, that defendant either denied plaintiff's right, or
did some act amounting to a denial." See Rev. Code 1860,
section 3605. That statute has been dropped from the Code
and is no longer in force in actions to recover dower as
against strangers. Many cases are cited where actions were

brought against heirs or their alienees, but these are not in point.

We have found no cases which run counter to the views above expressed, and following the weight of authority, as well as of sound reason, we must hold that plaintiff's action is barred.

For this reason the decree of the trial court must be, and it is, *affirmed*.