41　39
132　157

41　39
142　398

41　39
185　605

41　　39
198　1　72

## HARRIET STEELE

*v.*

## ADA B. GELLATLY.

1. DOWER—*limitation act of* 1839. It was held in *Owen* v. *Peacock*, 38 Ill. 33, that where the statute of limitations of 1839 had run against a widow, after she had become *discovert*, and counting the seven years from the time her right of action for her dower had accrued, the statute could be set up as a bar.

2. But the statute does not commence to run against the right of dower until a right of action therefor has accrued to the claimant, which cannot be until she becomes discovert. During the life-time of the husband, the wife

has an inchoate right of dower, but this inchoate right cannot be asserted against an adverse possession until it has become consummate by the death of the husband.

3. The act is one of limitation, and, like all other acts of limitation, is not to take effect until the period of limitation has run, and is not to be construed as having commenced to run as against any claim or estate until such claim or estate can be lawfully asserted in the courts.

4. SAME — *laches of the husband.* Nor can the widow's right of dower be affected by the *laches* of the husband in permitting an adverse possession to exist during a period of seven years in his life-time, for the law protects the right of dower against the acts or *laches* of the husband.

5. LIMITATION ACT OF 1839 — *its constitutionality.* The constitutionality of the act of 1839, as a limitation law, is re-affirmed in this case.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion of the court contains a statement of the case.

Mr. J. W. WAUGHOP, for the appellant.

Messrs. SCAMMON, McCAGG & FULLER, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a petition for dower heard upon the following agreed state of facts, and a decree was entered *pro forma* for the defendant.

"That the petitioner was married to Ashbell Steele, at Rochester, in the State of New York, in the year A. D. 1827, when she was eighteen years of age; that they lived and cohabited together, and were known and recognized in said county of Cook as husband and wife, for about thirty years. That said Ashbell Steele died in said county of Cook, in the month of September, A. D. 1861, and that the said petitioner has continued to reside in said county of Cook ever since.

"That, on the 25th day of August, A. D. 1834, the said Ashbell Steele became seized and possessed of an estate of inheritance, in the law, in fee simple, of, to and in the

premises described in the petition filed in this cause by the petitioner, and in which she therein claims dower.

"It appears of record in said county, that, on the 8th day of June, 1835, said Ashbell Steele, and his wife, the petitioner in this suit, joined in a deed to Horatio J. Lawrence, as it seems, intending to convey said lot, but described it as in block 35 instead of block 34. But the certificate of acknowledgment of said deed does not state that the contents of said deed were made known to her, nor does said certificate state that she relinquished her dower in said premises.

"That Ada B. Gellatly, then Ada White, now wife of Francis Gellatly, one of the defendants in this cause, acquired a claim and color of title in good faith to said premises, by deed on the 28th day of October, A. D. 1855, under which she has been in the actual possession of said premises, and has paid all the taxes assessed on said premises, ever since she so acquired a claim and color of title.

"That the buildings now on said premises, were erected thereon by the said Ada B. Gellatly, within the last six years in place of other buildings, which were standing on said premises, at the time she acquired her claim and color of title to said lot."

We decided at the April Term, 1865, in the case of *Owen* v. *Peacock*, 38 Ill. 33, that, where the statute of limitations of 1839 run against a widow after she had become *discovert*, and counting the seven years from the time her right of action for her dower had accrued, the statute could be set up as a bar. We entertain no doubt as to the correctness of that decision, but the question presented by the record before us is widely different. In this case the husband of the petitioner had not been dead seven years at the filing of the petition, and the statute therefore had not run from the time such an interest had vested in the petitioner as could be asserted by action. It is, however, insisted that the terms of our peculiar limitation law are of a character to bar her claim.

We freely concede the language may be so interpreted, and

we are disposed to give to that law as large an operation as can be constitutionally given, and the legislature intended it to receive. It was in that view we held the widow to be barred in *Owen* v. *Peacock*. A right of dower has not been ordinarily considered as falling within the operation of the usual limitation laws; but we held in that case, that statutes of limitation belonged to a species of legislation peculiarly local in its character, to be established by each State according to its emergencies, and that if a State thought proper to pass a law applicable in its terms to a right of dower, there was no reason why the courts should not apply it to a right of that nature resting in action merely, as well as to a determinate and vested estate. But we were only considering cases, like the one before us, where the statute had run after the right of action accrued, and, although that opinion, being still in manuscript and not before the writer of this, cannot be quoted *verbatim*, he is under the impression that it is carefully limited to cases of the character then before the court.

But, while we still hold that there is no reason why a claim to dower should not be held subject to the statutory limitation, as well as any other species of estate, if the language of the law clearly embraces it, yet we cannot suppose the legislature intended such claim should be barred before the widow had had the opportunity of asserting it, and if they had so intended their act would have been void. But no such intention is to be imputed to them. However comprehensive may be the language of an act of limitation, we think no case in this country is to be found where the courts have held that the act begins to run, or can begin to run, until there is some person in being by whom an action can be brought. So decided have the courts been upon this point, that, although it is a general rule, when the statute has once begun to run, it shall continue to run in spite of supervening disabilities, yet, in the case of *Jackson* v. *Johnson*, 5 Cowen, 74, the court held that the statute, having commenced to run, actually ceased during the period when the person having the right had no legal power to enforce it. This question is, of course, wholly distinct from that of

mere disabilities. Whether married women, or infants, or any other class of persons having an estate, shall be considered as under disabilities, and, therefore, excused from bringing suit, or what period of time shall be allowed them after such disabilities are removed, are, undoubtedly, questions for the legislature, and the courts have only to obey its behests. But the case we are considering is not one of technical disabilities in the ordinary sense of that term, where the persons having the right have also the legal power to assert it in the courts, but are excused on account of infancy or coverture, but it is one where the claim sought to be barred has been in such a position that it could not be asserted by any one. If a claim of this character could be barred, it would be simple confiscation, without crime, fault or *laches*, on the part of the owner, and we cannot suppose the legislature so intended.

As to the constitutionality of the law of 1839, it has been several times before the court, and we are not disposed to re-open the question. It has been held constitutional to the extent that it can be fairly applied as a limitation law, and no further. To this ruling we adhere, and as it has been for some years a rule of property, under which titles have been bought and sold, it would be most unwise to disturb it. It is urged by the counsel for defendant in error, that even limitation laws, while acting professedly upon the remedy, practically transfer the title. This is true, but this result is only consequential, and only follows after the law has run its course as a strict bar of the remedy. An illustration of this doctrine is afforded in the case of *Paullin* v. *Hale*, decided at the present term of court (40 Ill. 274), in which, while adhering fully to the former decision, that the mere payment of taxes unaccompanied at any time by possession, cannot be made available as an offensive title, we hold that, when a person has paid the taxes under color of title for a period of seven years, and then takes possession so as to be in a position where he can set up the statute as a bar to the paramount title, he may oust the owner of even the paramount title, if he afterward enters when the possession is temporarily vacant. This decision is in strict harmony with the former

rulings of this court, and with the rulings of all courts upon the ordinary acts of limitation. But the difference between this practical consequence of an act of limitation, and a construction which would divest a title before the statute had come into its legitimate action as a bar to an existing remedy which the owner of the outstanding right had negligently refused to apply, is too wide and too palpable to need discussion. It was precisely to the extent that the act might seem, by its comprehensive language, to do this, that this court held it to be unconstitutional.

The act then is one of limitation, and like all other acts of limitation is not to take effect until the period of limitation has run, and is not to be construed as having commenced to run as against any claim or estate until such claim or estate can be lawfully asserted in the courts.

For example, suppose A is tenant for life with remainder in fee to B, and C enters adversely under color of title and pays the taxes for seven years. The tenant for life would be barred, but can there be any doubt but that after his death the remainder-man might bring his action and recover? To hold otherwise would be to divest his estate without *laches* on his part, as he could not bring suit during the existence of the tenant for life. This principle is directly settled in the case of *Higgins* v. *Crosby*, 40 Ill. 260, decided at the present term of this court. As against the estate in remainder, the statute does not begin to run until after the death of the tenant for life, and it must run its full period before that estate is barred. The case before us is not dissimilar in principle.

When the defendant in this record commenced his adverse possession and payment of taxes, the petitioner had an inchoate right of dower. It was a right carefully guarded by our laws, and placed beyond the power of the husband to alien or impair by his contracts, or to forfeit by his *laches*. To such an extent has this court held an inchoate right of dower to be a vested interest in land, that, in the case of *Russell* v. *Rumsey*, 35 Ill. 362, it was decided that the legislature had not power to divest it by a retrospective enactment. But this inchoate right could

not be asserted against the adverse possession, until it had become consummate by the death of the husband. The wife was precisely in the position of a remainder-man. Nor can it be urged that she is barred by the laches of her husband, because that would be permitting the husband to cut off his wife's dower by conveying his land and giving possession to the purchaser, provided the husband should survive for seven years. To permit this would be against the whole policy of our law in regard to dower, and a violation of its express provisions which carefully place it beyond the husband's reach. The right to dower in the wife was an interest in the land wholly distinct from the estate of the husband, and incapable of assertion in the courts until the death of the husband. As against this claim, the statute would not begin to run until a right of action accrued, and would not be a bar until the period of seven years had expired.

*Judgment reversed.*