Thompson v. McCorkle.

Filed Jan. 30, 1894.

---

No. 16,260.

## THOMPSON v. McCORKLE.

NOTICE.—*Insufficient.*— *Publication.*— *Jurisdiction.*— *Judgment, When a Nullity.*—*Action to Set Aside.*—*Real Estate.*—*Married Woman.*—Notice, by publication, to John McCorkle and —————— McCorkle, his wife, of the pendency of an action to quiet title to real estate, which was instituted after the death of said John McCorkle, is not notice to Maria McCorkle, widow of said John McCorkle; and that being the only attempt to bring her into the action, and service of process not being waived by her, she not appearing to the action, and, in

fact, having no knowledge of the pendency of the action, and being before, at the time of, and since the institution of the action, a resident of the State but not of the county where the action was instituted, the court obtained no jurisdiction over her, and the judgment rendered therein was a nullity as to her, and may, as to her, be set aside, where fraud is shown; but where the finding of the court shows that she was a party to the record, or fails to show that she was not a party, and that there was a complete record of service, as to her, made in good faith, she is concluded from asserting the contrary.

REAL ESTATE.— *Taxes.—Liability for.—Purchaser at Tax Sale.—Inchoate Interest.*—Where a purchaser at a tax sale buys land in which a wife holds an inchoate interest, he becomes the legal owner of the land, subject to her inchoate interest, and, as such, he is bound to keep the taxes paid, and in the event the wife's interest becomes a title, on the death of her husband, she is not liable for any of the taxes accruing previous to the death of her husband, when her title became absolute.

STATUTE OF LIMITATIONS.—*Inchoate Interest of Wife.*—The statute of limitations does not begin to run against the inchoate interest of the wife, in lands held by her husband, until her husband's death.

JUDGMENT.—*Direct Attack.—Notice.—Fraud.*—Where a judgment defendant assails a decree on the ground of want of actual notice and fraud in its procurement, it is a direct attack thereon.

TAX SALE.— *Title.—Inchoate Interest Not Affected.—Married Woman.*— The sale of land for taxes does not extinguish an inchoate interest which a wife may have therein nor in anywise affect it. The purchaser at such sale only takes a derivative title.

PARTIES.—*Necessary Parties.—Quieting Title.—Inchoate Interest.*—In an action to quiet title to land, a married woman claiming an inchoate interest therein, or, on death of her husband, claiming an absolute interest therein, is a necessary party to such action.

From the Jasper Circuit Court.

*S. P. Thompson, B. K. Elliott* and *W. F. Elliott*, for appellant.

*T. B. Adams* and *I. Carter*, for appellee.

DAILEY, J.—The appellee, as widow of John McCorkle, who died at Shelbyville, Indiana, May 20, 1880, on the 13th day of January, 1890, brought an action, in the Jasper Circuit Court, against the appellant, alleging, in substance, that her husband, prior to August 23, 1859, owned the north half of the southeast quarter of section

21, township 31 north, range 7 west, containing 80 acres, in said county; that plaintiff is the owner of the undivided one-third of said real estate, and defendant is owner of the undivided two-thirds part thereof; that the same is susceptible of equitable partition between the owners according to the respective rights and interests; that defendant, with the wrongful intent to cheat and defraud plaintiff, on December 3, 1883, filed, in the Jasper Circuit Court, a complaint in two paragraphs, in which he falsely alleged that he was the owner in fee of said tract and certain other lands therein described; that when the same was filed, he knew he was the owner in fee of but two-thirds, and that plaintiff was the owner in fee of the one-third part thereof; that plaintiff was, at the time of filing said complaint, and ever since has continued to be, such owner; that said Thompson, in his complaint, falsely alleges that "the defendant claims some interest in said land, the nature of which is unknown to plaintiff, but plaintiff says that said claim casts a cloud upon his title to said real estate"; that in pursuance of his fraudulent design, and to carry the same into effect, he caused and procured an affidavit to be made by one Austin, averring that said action was brought to quiet title to certain land in said county; that defendants were necessary parties thereto, and were nonresidents of the State of Indiana; that on said false affidavit and pursuant to his fraudulent design, and to carry the same into effect, he caused and procured the clerk of the Jasper Circuit Court to issue and publish in the "Rensselaer Republican," a weekly newspaper of general circulation, printed and published in said county, a notice to certain parties, among whom were John McCorkle and ―――― McCorkle, his wife, notifying them that plaintiff had filed his complaint, in said court, to quiet his title to and foreclose a tax lien on said prem-

ises, and that the same would stand for trial on Saturday, January 26, 1884; that afterwards he procured the publisher of said paper to make an affidavit of the proper publication of said notice, and caused the same to be filed in the office of the clerk of said court as proof of the pendency of said cause and of the subject-matter thereof, and procured the clerk to indorse the filing thereon; that no other notice was ever issued or given to the defendants, or either of them, in said cause; that no summons was ever issued in said cause, and no notice of the pendency of said suit was ever served upon or given to the plaintiff herein; that she did not, either by person or attorney, enter her appearance to said suit; that she did not waive the service of process upon her in said suit, and did not acknowledge process or the service of process upon her therein, and had no notice, or knowledge that such suit had ever been brought or judgment taken in the same, until November 6, 1889, and there was no attempt to bring her into court in said suit, except by publication as stated; that afterwards said Thompson, pursuant to his fraudulent design, and to carry out the same, presented to the court said notice and said affidavit of publication as proof of notice to defendants, in said suit, and moved the court thereupon to default the defendants in said cause for want of appearance and answer, which motion was sustained and said defendants were called in the names as set out in said notice, and, as such, defaulted; that thereupon said Thompson moved the court for judgment against defendants upon such default, which motion was sustained, and judgment was then rendered quieting the title to, and foreclosing his tax lien on, said real estate, and adjudging him to be the owner in fee thereof; that the court also found the notice sufficient to give the court jurisdic-

tion of both the subject-matter and the parties defendant to said suit.

Plaintiff further avers that John McCorkle died intestate, at Shelby county, Indiana, on May 20, 1880, and that she has resided continuously in said Shelby county for seventy years last past; that at no time during her life has she lived in any State, territory, district or county other than where she now resides; that her name is Maria McCorkle.

And plaintiff further says that by reason of the fraudulent conduct of defendant he procured said fraudulent judgment to be rendered; that the court had no jurisdiction of her person to render any judgment against her in said suit to quiet title to said real estate; that said judgment is both fraudulent and void, but is a cloud upon her title to one-third of said real estate.

Wherefore she asks that said judgment be adjudged void as to her, and set aside, and held for naught; that she have partition of said real estate; that she be adjudged the owner in fee of the one-third of the same; that commissioners be appointed to make partition, and that she have all other further and proper relief.

To this complaint there was an answer filed in five paragraphs. To the third and fifth a demurrer was sustained.

The fourth paragraph of what purported to be the answer, was a counter-claim. To this paragraph plaintiff filed an answer in three paragraphs.

A demurrer was sustained as to the second of these, and overruled as to the third.

A reply to the second paragraph of the answer was filed in three paragraphs. To the first and third of these a demurrer was overruled.

The issues, as made, and upon which the cause was tried, were upon the complaint; the first, second and

fourth paragraphs of answer; the reply to the second paragraph of the answer, in three paragraphs; and first and third paragraphs of answer to the counter-claim.

The court found the facts specially and stated its conclusions of law thereon.

The defendant excepted to each conclusion of law, and thereupon moved for judgment in his favor, which motion was overruled.

The plaintiff moved for judgment in her favor, which motion was sustained.

The appellant has assigned many errors, being numbered, in the record, from 1 to 13 inclusive. Some of these have not been discussed by him, and are, therefore, waived.

We will endeavor to consider such questions as were assigned as error and have been discussed.

The complaint sets forth evidentiary facts, as well as facts which the statute requires shall be pleaded. This was evidently done that plaintiff's cause of action might be tested by demurrer.

"Ordinarily, an action for partition does not present the question of title for adjudication, but the pleadings may be so framed as to present that question." "Where a plaintiff undertakes to set forth the facts which constitute his title he will fail unless the facts are sufficient to clothe him with the title asserted, and it is the facts sufficiently pleaded which will control and not the general averments." *Spencer* v. *McGonagle,* 107 Ind. 410 (413); *McPheeters* v. *Wright,* 110 Ind. 519; *City of Logansport* v. *McConnell,* 121 Ind. 416.

The complaint before us must be tested by applying the law to the facts specially pleaded, for it is the rule that if, under the law, the defendant's appears to be the better title, or if the plaintiff's title appear not sufficient

to entitle her to recover on its own strength, then the complaint should be held bad.

The demurrer was for want of facts.

The complaint shows that plaintiff resided in Shelby county, Indiana, for seventy years continuously, and that the only service, as to her, was by publication addressed to ———— McCorkle, wife of John McCorkle; that the husband had died May 20, 1880.

We recognize the rule that even on constructive service the question of the jurisdiction of a court of record over the parties to any domestic judgment must, in all collateral proceedings where fraud is not shown, be determined by the record, where the jurisdiction affirmatively appears from the record. In such case it would import absolute credit and verity and parties could not be heard to impeach it. In other words it will be conclusively presumed that the court acted upon ample evidence and with due deliberation before making such statement; and the judgment will be impregnable to any collateral assault by proof *aliunde*.

In *Muncie* v. *Joest, Treas.*, 74 Ind. 409, the court says: "There is a clear distinction between cases in which there is no notice whatever, and those in which there is a mere defective or irregular notice.

"The general rule upon the subject, deducible from the authorities, may be thus stated: If there is no notice whatever, and this affirmatively appears upon the face of the proceedings, the judgment will be void, and may be overthrown by a collateral attack. If a court, having jurisdiction, * * and required to determine all jurisdictional questions, either expressly or impliedly, adjudges that notice was given, its decision will repel a collateral attack, unless the record of the court affirmatively show that no notice was given; and this is so although the record show a defective and irregular notice."

The later decisions of this court seem to establish the rule that an action of this character, where no fraud is alleged, is not a direct attack upon the judgment, and that "any attack upon a judgment for want of jurisdiction in the court to render it, predicated upon a matter dehors the record, is collateral." *Cully* v. *Shirk, Exr.,* 131 Ind. 76.

The complaint in this action assails the complaint on which the judgment was rendered, which is sought to be set aside, the notice thereof by publication and the judgment rendered in said cause also, on the ground that Maria McCorkle is only attempted to be made a party by the following definition or description of herself, "John McCorkle, ——— McCorkle, his wife," and it appears that all this transpired more than two and one-half years after the death of the husband. Would such attempted description or identification of a person, "——— McCorkle," his wife, following a name which applied to no person then in being, constitute notice to Maria McCorkle? The husband being dead when the suit was instituted, with the cessation of life he was placed beyond the jurisdiction of all earthly tribunals, and such proceeding thus far was a nullity. By the death of John McCorkle, appellee could no longer sustain the relation of wife to him; his companion had become his widow and as against the widow, from the complaint, no suit was ever instituted or prosecuted, and no judgment ever obtained.

We think that such complaint and notice could not alone create jurisdiction over the person of Maria McCorkle so as to bind her by a decree, and that a record containing such indefinite and uncertain description would be void as to her.

This court, in *Schissel* v. *Dickson,* 129 Ind. 139, 28 N. E. Rep. 540, says: "A judgment is void if the court rendering it had no jurisdiction of the subject-matter. It

is not, however, necessarily void because the court did not have rightful jurisdiction of the person against whom it is rendered. If there had been service of process, although irregular, but which the court adjudges regular and sufficient, the judgment rendered is ñot void, and although it may be set aside, in a direct proceeding for that purpose, it will withstand a collateral attack.''

One of the questions upon which the court was required to pass was the sufficiency of the affidavit, and whether or not, in fact, the service by publication on the parties named in the affidavit and notice was sufficient to give the court jurisdiction of their persons, so far as these questions thus decided may be brought in question collaterally, that decision, although erroneous, is conclusive on the parties. It is, however, only parties to judgments and those who are in privity with them who are thus bound.

And the court further finds that constructive service addressed to ——— Hilton, without other description or identification, will not suffice to bring into court Cora B. Hilton or Cora B. Dickson, and she is in no manner affected by the decree. This court, in *Clark* v. *Hillis*, 134 Ind. 421, 34 N. E. Rep. 15, held that notice to ——— Clark, by publication, is not binding upon Helen I. Clark, and she may attack the proceeding collaterally.

Where the complaint alleged, that the defendant was not a resident of the county where he was returned, as served by a copy left at his last and usual place of residence; that he never made his home, or even staid over night, at the house where the copy was left, and it is also alleged that he was not at the time within the jurisdiction of the court in which the action was pending, and it is averred that the pretended service and return to summons were procured by the fraud of the attorney of the plaintiff, such charge would be a direct attack on

the judgment.    The features of nonresidence and fraud are the controlling elements that make it so.    *Dobbins* v. *McNamara*, 113 Ind. 54; *Penrose* v. *McKinzie*, 116 Ind. 35; *Cavanaugh* v. *Smith*, 84 Ind. 380.

In *Nietert* v. *Trentman*, 104 Ind. 390, the court held that in a proceeding under the statute (section 99, 2 R. S. 1876, p. 82; section 396, R. S. 1881), to set aside a default and to be relieved from a judgment, the plaintiff may show, as an excuse for not appearing to the action in which he was defaulted, that summons was not in fact served upon him, and that he had no notice of the pendency of the action, or of the rendition of the judgment, notwithstanding the fact that the sheriff's return shows service by reading.

As the complaint in this case alleges residence in the State, no actual notice, and fraud in its procurement, it constitutes a direct attack.    In other words, it shows that the court acquired no jurisdiction over the person of the appellee, as well as the existence of fraud.    There was no motion to separate causes of action, nor was there any demurrer on account of actions improperly joined, and if the facts stated show that the judgment should be set aside as to the defendant therein, then the complaint was good against the demurrer for want of sufficient facts.    If there were two causes of action joined in one paragraph of complaint, misjoinder would not be cause for reversal.    R. S. 1881, section 341.

Tersely stated, if the defendant is not made a party, and is not served with process, then there is no jurisdiction, and without jurisdiction there can be no valid judgment as to her.    It would be a mere nullity, and a complaint stating these facts would resist a demurrer.

"A void judgment is, in legal effect, no judgment. By it no rights are divested.    From it no rights can be obtained.    Being worthless in itself, all proceedings

founded upon it are equally worthless.    It neither binds nor bars any one.    All acts performed under it and all claims flowing out of it are void.    The parties attempting to enforce it may be responsible as trespassers.    The purchaser at a sale by virtue of its authority finds himself without title and without redress.    *    *    *    If it be null, no action upon the part of the plaintiff, no inaction upon the part of the defendant,    *    *    *    can invest it with any of the elements of power or of vitality.''    Freeman on Judgments, section 117.

It is considered unjust and unconscionable to allow a cloud to remain upon title where the proceeding has been without notice and opportunity of defense.

The conclusion we have reached—from the averments of the complaint, that the appellee was not a party to the judgment she seeks to vacate and set aside, as a legal wrong—renders it unnecessary for us to determine what the effect of section 600, R. S. 1881, would have been, had she been a party to the action which she seeks to avoid.

No tender of taxes was necessary before the suit. *Schissel* v. *Dickson, supra.*

The complaint states facts sufficient to constitute a cause of action.

If the appellant and appellee were tenants in common at, before, and ever since the pretended judgment was taken, one tenant in possession can not get title to the premises against his cotenant, by allowing the property to be sold for taxes.    *Bender* v. *Stewart,* 75 Ind. 88.

With reference to the ruling of the court in overruling a demurrer to the third paragraph of answer to the appellant's counterclaim, we only need state that appellee owned no part of the land sold for taxes, at the time it was sold, and was under no legal obligation to pay them. The most she then had was an inchoate right to the one-

third part, which would ripen into a title in the event she survived her husband.

When appellant bought the land at tax sale, he got no more than the man had who purchased it from John McCorkle. There would be no pretense that if Thompson's title depended upon a conveyance to him by Mc-Corkle's grantee, the appellee would not own the interest she asserts, or that she would be liable for taxes accrued prior to the death of her huband. By his death her status was changed, and she became legally bound to pay one-third of the taxes to accrue thereafter during the cotenancy.

The counterclaim asks that if the judgment be set aside, appellee be required to pay him money for taxes assessed and paid by him before she was his tenant in common.

Appellant, when he bought the land at tax sale, was bound to know that appellee had not joined in the deed with her husband, and, in the event she survived him, she would inherit the interest now claimed. He took the risk just the same as if he had bought directly from John McCorkle. As he acquired no title against appellee, at tax sale, for what he paid, he became the legal owner of the land, subject to her inchoate interest, and, as such, was bound to keep the taxes paid. *Snoddy* v. *Leavitt*, 105 Ind. 357 (362); *Wright* v. *Tichenor*, 104 Ind. 185.

Concerning the action of the court in overruling a demurrer to the first paragraph of answer, it is the law that the statute of limitations never begins to run against a person until a cause of action, in his favor, accrues. There was no cause of action against appellee until the husband died, May 20, 1880. *Wright* v. *Tichenor, supra.*

The same reasoning applies to the assignment of error

"that the court erred in overruling a demurrer to the third paragraph of reply to the second paragraph of answer."

We find no error in the rulings upon the pleadings.

The eighth assignment of error, "that the court erred in overruling the motion of appellant for judgment in his favor on the special findings of fact," raises a somewhat different question. These findings, as we construe them, show no breach of duty on the part of the appellant. There does not appear in them a single element of fraud practiced by appellant, either on the court or the appellee. The findings that in appellant's action to quiet his title to the land in controversy, against the plaintiff, appellee herein, the service was by publication based upon affidavit, setting up that she was a nonresident of the State of Indiana, which was not true in point of fact, she being, at the time, a resident of Shelbyville, in this State, but the place of her residence was unknown to defendant and to W. B. Austin, who made the affidavit; that on the 20th of March, 1884, upon proof of publication of notice to her, as a nonresident of the State, she was called and defaulted, and a decree entered foreclosing a tax lien in favor of said Thompson, and the land sold at sheriff's sale, of which proceedings she had no knowledge; that the decree of the Jasper Circuit Court foreclosing said lien against her is null and void, because the court had no jurisdiction to enter the same; that it is a cloud upon her title, and should be set aside as to her, show that appellee was a party to the judgment she seeks to vacate.

There is nothing in the finding that tends to show that appellee was not a party to the record. On the contrary, the finding shows she was a party to both the notice and record containing the decree of said court. Had the finding recited the form of what purported to

be the notice given and the record thereof, as they really existed, "———— McCorkle, wife of John McCorkle," it would have been apparent to the court, that there was no notice to appellee, and no record to which she was a party, and hence nothing which she was estopped to deny.

Having failed to find such facts, and having found that there was a complete record of service, as to appellee, made in good faith, the record concludes her from asserting the contrary.

Where the special facts found show that the assault was purely collateral, it would violate well established rules to allow it to prevail upon matters *dehors* the record.

The conclusions of law, from the facts found, are erroneous.

Being of the opinion that justice will be best subserved by instructions to the court to grant a new trial, rather than to restate conclusions of law, judgment is reversed, with instructions to the court to grant a new trial.

Filed Sept. 26, 1893.

OPINION ON MOTION TO MODIFY MANDATE.

DAILEY, J.—The learned counsel for the appellant have filed a motion to modify and change the decision and the mandate in this cause.

This motion is supported by two vigorous and able briefs, which present substantially the same questions. The case had due consideration, and the questions involved were fully considered in the original opinion, and we deem it unnecessary to repeat what is there said.

It is clear that a complaint by a judgment defendant, assailing a decree on the ground of want of actual notice and fraud in its procurement, constitutes a direct attack

thereon, and it is unnecessary to further collate authorities in support of so plain a proposition.

Counsel say "the appellee was not a necessary party to the suit to quiet the title of the appellant to the land, because her right was not of record in Jasper county, so the question as to whether —— McCorkle, wife of John McCorkle, was a sufficient description of the person of the appellee, is not material."

This position is not tenable. Appellant attempted to make her a party, and evidently thought it was essential. We fully concur in the theory he then adopted, because it harmonizes with, and is supported by, section 2143 of Elliott's Supp., which says: That "all parties who have, or claim to have, or appear of record in any of the public offices of the county where such land or lot is situated, to have any interest in or lien upon such lands or lots, shall be made defendants in such suit."

The appellee claimed, and still claims, an interest in the land, and is a necessary party defendant.

When one seeks, by constructive notice, to obtain a judgment against another, there must be a strict compliance with the statute, because a notice not provided for by statute does not constitute notice, and can not divest title.

Section 2491, R. S. 1881, provides that "A surviving wife is entitled, except as in section 17 (section 2483) excepted, to one-third of all the real estate of which her husband may have been seized in fee simple at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law, and also of all lands in which her husband had an equitable interest at the time of his death," etc.

"The rights of the widow, under this section, do not descend to her as heir; she takes by virtue of her marital

relations with her deceased husband.'' *May* v. *Fletcher*, 40 Ind. 575; *Bowen* v. *Preston*, 48 Ind. 367.

By virtue of this statute, during the lifetime of the husband, the wife had an inchoate right in the real estate in controversy contingent upon her surviving him, and which could not become absolute except by his death. Her claim, during the entire interval, was in such a position that it could not be asserted by any one. The case was not one of mere disability growing out of coverture. Strictly speaking, she had no estate in the premises, it was a mere expectancy. Had she died before her husband, the right would have been extinguished. It could not be transmitted by will or the laws of descent. It was one she could not transfer by sale, except to relinquish it to the owner of the fee. It could not have been sold on execution, and is not barred by a tax sale and conveyance in consequence thereof. She could have brought no action during the interim to arrest the running of the statute, had it once been set in motion against her, and she had no right or title which could have been enforced while the husband lived. *Miller* v. *Pence*, 23 N. E. Rep. 1030; *McClanahan* v. *Williams*, 136 Ind. 30.

It is true the Legislature may declare that a wife's inchoate interest shall be divested by a tax sale, and a conveyance of the land thereunder, but our law-makers have not so provided, and until it has been so enacted by clear and express words, her contingent interest should not be destroyed by judicial decision. This interest is in lieu of and is analogous to dower, except it has been enlarged from a life estate to a fee, and is guarded with more jealous care by legislative enactment and judicial decision.

It is urged that appellant and appellee could not be tenants in common, unless the latter had been such ten-

ant with the State, since, it is claimed, the former gets his title from the State. This is incorreet. The State nevor owned this land, and could not buy land at a tax sale. The only thing the statute speaks of as belonging to the State, when the taxes on realty are not paid, is a lien therefor. It is assumed as a fundamental proposition that the lien of the State for taxes is paramount, then it is concluded that all interests, vested and inchoate, are subject to the sovereign right. It is true an inchoate right does not exist against the sovereign will, in the exercise of the right of eminent domain, because in such case the property itself is taken and paid for, while in the assessment and collection of taxes the property itself is not taken, no compensation is guaranteed or given— the tax is a lion on the property, and the property is not taken by the State to satisfy the lien—but it is sold for that purpose. The distinction between taxation and the taking of property in the exercise of the power of eminent domain, is clear and well recognized in the authorities. 1 Blackwell on Tax Title (5th ed.), sections 11 and 51.

This being so, principles governing as to the law of eminent domain are not applicable in considering the question of the law of taxation.

The case of *Duncan* v. *City of Terre Haute*, 85 Ind. 104, involving a dedication by a husband, is instanced, but is not in point, for the reason that it arises under a different statute and on a different state of facts. No case is decisive of anything except the question involved and decided in it, and whether it was well considered or not, it can not control the decision of this case.

It is said by counsel, that a tax title is not a derivative title; that it does not come from the owner, but from the sovereign; that the purchaser does not derive title through the former owner; that there is no privity be-

tween them, and that taxes are not laid upon titles, but upon the land.

In answer to this, we quote from Blackwell on Tax Titles (3d ed.), p. 547: "In those States where the tax is a charge upon the land alone, where no resort, in any event, is contemplated against the owner or his personal estate, and where the proceeding is strictly *in rem*, the tax deed will undoubtedly have the effect to destroy all prior interests in the estate, whether vested or contingent, executed or executory, and those in possession, reversion, and remainder. In such case, the tax law itself is notice to the whole world of the liability of the land for all public assessments.    *    *    *    On the other hand, where the law requires the land to be listed in the name of the owner of the fee, or of any other interest in the estate—provides for a personal demand of the tax—and in case of default authorizes the seizure of the body or the goods of the delinquent, in satisfaction of the tax—and in terms, or upon a fair construction of the law, permits a sale of the land only, when all other remedies have been exhausted—then, the sale and conveyance by the officer, passes only the interest of him in whose name it was listed—upon whom the demand was made—who had notice of the proceedings, and who alone can be regarded as legally delinquent. In such cases the title is a derivative one, and the tax purchaser can recover, in ejectment, only such interest as he may prove to have been vested in the defaulter at the time of the assessment. Any other construction of laws containing such provisions, would be in violation of the spirit which moved the Legislature to enact them, and be the means of depriving innocent persons of their estates."

Our law requires the land to be listed in the name of the owner. Section 6378—a personal demand of the tax. Section 6427 authorizes the personalty to be first

sold.   Sections 6447, 6429—and the realty can not be sold as long as there is personalty to pay the tax.   *Abbott* v. *Edgerton*, 53 Ind. 196.

It is also made the duty of an executor or administrator to pay the taxes accrued against the personal and real estate of the decedent at the time of his death.   Section 2378, R. S. 1881.

These provisions are almost identical with those laid down by the author, and upon that authority it is plain that the purchaser at the tax sale did not get the appellee's inchoate interest, and that by such sale her interest was in nowise affected.

We think it is settled law that no part of the tax paid by the appellant on the land, before the appellee's inchoate rights vested, can be charged to her.   The appellant had possession of the entire premises until then, and gets two-thirds of it in fee.   As he held a deed for it, and all of it was listed in his name and taxed to him and none to the appellee, there was no duty resting upon her to pay the taxes on one-third of it, and to have done so would have laid her liable to an action on his part for slandering his title, had she insisted that she owned the one-third of the tract in fee.   She was powerless, and could do nothing to protect herself.

Can it be said, notwithstanding all this, that the statute will run and bar her rights?

It would be unjust to give it such construction, and we are not inclined to do so.

In view of what we have said, it can not be insisted that she could prevent the misfortune by paying the taxes herself.   She did not own the land, and was under no obligation whatever to do so.   The law never contemplates that a person shall do an unreasonable act to protect her rights.   Moreover, she could not know that she would survive her husband; and it would be very

unreasonable to require her to pay taxes which she never could recover back, and when there was no assurance that she would, in the end, have a vested interest in the land.

We feel that it would be unjust, in this case, for the reasons stated, to modify and change the decision and mandate.

The motion is therefore overruled.

Filed Jan. 24, 1894.