PHEBE LUCAS, Appellee, v. JAMES WHITE, Appellant.

**Dower:** LIMITATION OF ACTION. The statute of limitations does not commence to run against a wife's right of dower until the death of the husband.

*Appeal from Muscatine District Court.*—HON. J. W. BOLLINGER AND HON. P. B. WOLFE, Judges.

WEDNESDAY, MAY 27, 1903.

THE opinion states the case.—*Affirmed.*

*Jayne & Hoffman* for appellant.

*O. A. Byington* and *Titus & Jackson* for appellee.

WEAVER, J.—Plaintiff married Edward W. Lucas, in December, 1852, and said marriage relation continued until the death of the husband in the year 1900. In the year 1853 Edward W. Lucas and Gilman Folsom together obtained title from the United States to the northwest quarter of the southeast quarter and the south one acre of the southeast quarter of the southwest quarter of section 18, township 78 north, of range 3 west, in Muscatine county, each of the said parties being vested with an undivided half in said lands. The plaintiff never conveyed away or joined in any deed relinquishing her inchoate right in said property, and upon the death of her husband brought this action to have admeasured and set apart to her, as the widow of the said Edward W. Lucas, the one-third in value of the one-half of said lands. The defendant resists her claim, denying her right to the relief sought, and alleges title in himself by deed made by one Null to Hezekiah Pray in the year 1855, and from Pray through several intermediate grantees to himself. He further alleges continuous, adverse possession in himself and his said grantors during all said period from 1855 to the present time, and that plaintiff's right of action is barred by the statute of limitations. This issue of the statute of limitations, which was determined by the trial court upon demurrer adversely to the defendant, is the only question presented in argument.

The statute provides, in effect, that the time limitation upon the right of action begins to run from the time when the "cause" thereof accrues. Code, section 3447. If, then, plaintiff's cause of action accrued to her when the alleged adverse possession was initiated in the year 1855, her action is manifestly barred; but, if the cause accrued only upon the death of her husband in the year 1900, it is equally manifest that the bar has not arisen and the judgment of the district court is right. The action is brought, as we have seen, to enforce a right which could mature only upon the death of the husband. During his

lifetime the right was inchoate only, and would die with the wife, if she did not outlive him. In the very nature of things, there could be no admeasurement of common-law dower or statutory distributive share in the husband's estate during his lifetime, and, such being the case, it appears clear that the statute has not run against plaintiff's demand. It is urged, however, that the courts recognize the inchoate right of the wife in her husband's lands as having the elements of property, and actions have been upheld for its protection, even in the lifetime of the husband. From this premise the conclusion is drawn that, as plaintiff sought no such remedy or protection during the long period between the years 1855 and 1900, she is barred from now asserting her claim. We think that it will be difficult to find any well-considered decision supporting this contention. The cases cited—*Buzick v. Buzick*, 44 Iowa, 259, and *Madigan v. Walsh*, 22 Wis. 501, and others of that class—do not go to the extent claimed for them.

The utmost of these holdings is that where, by some fraud or mistake, the title of the husband has been so divested as to apparently divest the wife's interest also, she may maintain an action, not to recover the property or to set apart any share therein, but to remove the cloud upon her inchoate right. For example, in the *Buzick Case* the husband, in collusion with his son, permitted the latter to obtain a sheriff's deed to the former's property in order to defraud the wife, while in the *Madigan Case* the wife had been induced by fraud to execute a deed relinquishing her right. It may well be that where, by fraud or mistake, the wife's inchoate interest has been apparently extinguished or released, if she permits the record to remain in that condition without some action to cure it, the statute of limitations will run against her even in the husband's lifetime; but this we are not now required to

decide. It is an altogether different proposition to say that when, by the misfortune, neglect, or thriftlessness of the husband, a third party succeeds in acquiring title by adverse possession against him, the loss of the husband's ownership works an extinguishment of the wife's contingent interest. The only case in which we have touched directly upon this question is *Hurleman v. Hazlett*, 55 Iowa, 256. In that controversy, a wife, being the owner of land, conveyed it by deed in which the husband did not join. After more than ten years the purchaser brought action to quiet his title against the husband (who was still living), alleging adverse possesssion as the ground for relief, and we held in clear and explicit language that the husband's right "cannot be so barred." The principle there recognized seems equally applicable to the present appeal. Such, indeed, is the almost universal holding of the courts of other states. The decisions very generally are to the effect that, as the wife's right in her husband's land during his lifetime is contingent upon her survivorship, and gives her no right of disposition, entry, or possession, independent of her husband, the statute of limitations does not begin to run against her until her interest has become mature by his death, even though a title by adverse possession has fully ripened as against him before his decease. Directly in point are *Steele v. Gellatly* 41 Ill. 39; *Taylor v. Lawrence*, 148 Ill., 388 (36 N. E. Rep. 74); *Williams v. Williams*, 89 Ky. 381 (12 S. W. Rep. 760 6 L. R. A. 637); *Miller v. Pence*, 131 Ill. 122 (23 N. E. Rep. 1030); *Wright v. Tichenor*, 104 Ind. 185 (3 N. E. Rep. 853); *Thompson v. McCorkle*, 136 Ind. 484 (34 N. E. Rep. 813, 36 N. E. Rep. 211, 43 Am. St. Rep. 334); *Smith v. Myers*, 7 Ky. Law Rep. 443; *Durham v. Angier*, 20 Me. 242; *Moore v. Frost*, 3 N. H. 126; *Smith v. Wehrle*, 41 W. Va. 270 (23 S. E. Rep. 712); *Hart v. McCollum*, 28 Ga. 478; 2 Scribner on Dower, 579; 1 Washburn Real Property (1862) 218, 250. When right of dower once attaches, the hus-

band cannot defeat it by any act or admission on his part; and neither his laches, default, covin, nor crime will be permitted to prejudice her right. *Williams v. Courtney*, 77 Mo. 588; *Grady v. McCorkle*, 57 Mo. 172 (17 Am. Rep. 676).

Ordinarily, the wife cannot relinquish her dower right in the husband's lifetime, except in the manner provided by statute. *Mason v. Mason*, 140 Mass. 63 (3 N. E. Rep. 19). Dower has long been accorded the careful guardianship of the courts. Lord Coke is quoted as saying, "There are three things highly favored in law—life, liberty, and dower," and McKean, C. J., in *Kennedy v. Nedrow*, 1 Dall. 415 (1 L. Ed. 202) says of it, "It is favored in a high degree by law, and, next to life and liberty, held sacred." The only cases coming under our observance tending to support the appellant's theory are *Winters v. De Turk*, 133 Pa. 359 (19 Atl. Rep. 354, 7 L. R. A. 658), and *Keys v. Keys*, 58 Tenn. 425. In the former it seems to be held by way of dictum that adverse possession by a disseisor, which ripens into a title against the husband in his lifetime, will bar a claim of dower by the wife; while in the latter case the doctrine contended for by appellant is fully sustained. The clear weight of authority, however, is with the appellee. We are cited to numerous cases holding that adverse possession for the requisite period ripens into an indefeasible title. The conclusion we have reached is not a departure from that rule. Our decision is based upon the proposition that there was no adverse possession by defendant and his grantors as against the plaintiff's demand until after her husband's death. This involves a consideration of the nature of adverse possession. It has been defined as possession by one person which is inconsistent with possession or right of possession by another. *Sheaffer v. Eakman*, 56 Pa. 144; *Morse v. Seibold*, 147 Ill. 318 (35 N. E. Rep. 369). In theory it is a possession founded in trespass or disseisin; an ouster of the true owner, and the continued exclusion of such owner for the

period of the statute of limitations. *Olewine v. Messmore*, 128 Pa. 484 (18 Atl. Rep. 495); *Bryan v. Atwater*, 5 Day, 181 (5 Am. Dec. 136); *Davis v. Bowmar*, 55 Miss. 671. Adverse possession cannot arise until there is some one to dispute the right claimed. *Marble v. Price*, 54 Mich. 466 (20 N. W. Rep. 531).

But in the case before us there was neither title nor possession nor right of possession in the plaintiff during her husband's lifetime, and defendant's possession, not being inconsistent with her inchoate right, cannot be said to have been in hostility to it, and was, therefore, not adverse. Her interest in the land was contingent only; a mere possibility, dependent entirely upon her survivorship. As to her, there was never any actual or constructive ouster. As she was never seised of the title, or any part thereof, until the husband's death, there was no disseisin in fact or in law. She had no claim upon the rents or profits, and was not chargeable with taxes or repairs. She could not maintain action of trespass against the persons in possession. There was no apparent release or judicial sale requiring action by her to remove a cloud so created upon her right. If defendant and his grantors had obtained their title through a deed from the husband in which the wife did not join, probably no one would contend that such conveyance and possession under it, no matter how long continued prior to the husband's death, would bar the wife's right of dower if she outlived him. Upon what principle shall we say, in the absence of statute to such effect, that a title obtained in hostility to the husband shall be more effective to eliminate the rights of the wife than a voluntary conveyance by him. If we do so decide, then we hold, in effect, that a wrongdoer may demand greater favor at the hands of the court than one who keeps strictly within the limits of his legal rights; for the grantee in the deed takes and holds possession as the true owner, while, as we have seen, adverse possession is

founded upon the idea of a protracted ouster or disseisin
of the true owner. In the absence of a statute to that
effect, a sale upon judicial proceedings against the hus-
band does not extinguish the dower right of the wife, and
she may enforce it against the purchaser at such sale if
she survive the husband. *Pense v. Hixon*, 8 Iowa, 402.
In some states it is held that a tax sale will not operate to
extinguish dower. *Thompson v. McCorkle*, 136 Ind. 484
(34 N. E. Rep. 813, 36 N. E. Rep. 211, 43 Am. St. Rep.
334); *Shell v. Duncan*, 31 S. C. 547 (10 S. E. Rep. 330, 5
L. R. A. 821). But in this state a tax title is considered,
not as being derivative from the delinquent taxpayer, but
as a new and independent title, granted by the sovereign
power of the state, and as extinguishing all claims based
upon the old title. *Bull v. Gilbert*, 79 Iowa, 547; *Bellows
v. Litchfield*, 83 Iowa, 36.

Much of the seeming difficulty in this class of cases is
obviated by remembering that the widow's right of dower is
not like that of an heir derived by descent from the hus-
band, nor does it date from his death. The right becomes
complete in her the instant there is a concurrence of seisin
in the husband and marriage relation between the parties.
It is not called into existence by the grant or grace or
favor of the husband, and the wife holds it wholly inde-
pendent of him. It is said in Park on Dower, page 237,
to be "a right attaching by implication of law, which,
although it may never be called into effect (as when the
wife dies in the lifetime of the husband), yet from the
moment the fact of marriage and of seisin have concurred,
it is so fixed upon the land as to become a title paramount
to that of any person claiming under the husband by any
subsequent act. After this right has once attached, it is
held by the wife entirely independent of her husband, and
it cannot be affected by any act or omission on his part."
*Cunningham v. Shannon*, 4 Rich. Eq. 140; *Tibbetts v.
Langley*, 12 S. C. 465. And, while her right becomes

effective only upon the husband's death in her lifetime, her dower attaches to the land not from the date of his decease, but from the date when her inchoate right had its origin.

Counsel argues that this conclusion renders possible the existence of two or more dower estates in the same land because in the time between the years 1853 and 1900 several different persons may each have successively acquired an independent title to the land by adverse possession, and, if all die leaving widows, each relict, under the doctrine here approved, may be dowable in the same premises. But the spectacle of two dowers in the same estate is by no means unknown. *McLeery v. McLeery*, 65 Me. 173 (20 Am. Rep. 683). Such complications may easily exist even without the intervention of adverse possession or the statute of limitations. Instead of counsel's illustration of five successive owners by adverse possession, let us assume five successive owners by deed of the same land in five successive days, each of the owners being a married man, whose wife does not join in the conveyance. If then on the sixth day these five men perish in some calamitous accident, each of the five widows will have an undoubted right to dower in the land which has been the subject of the transfers of title. This does not cast upon the court, as the counsel seems to think, the problem of finding "five thirds" in a single item of property, for each of the subsequent grantees took the title subject to the unreleased inchoate dower rights already existing in the land; and the right of his widow to dower is not to the one-third of the whole, but to the one-third of whatever remains after setting off the share or shares of those who are prior in order of time.

The question whether the plaintiff's dower is to be measured and governed by the law as it existed in 1855 or by the present statute, and of the rights of the parties in respect to improvements on the land, is not presented by the record, and need not be considered.

The judgment of the district court is AFFIRMED.